CITY OF ST. LOUIS v. HENRY DREISOERNER, Appellant.

**Division One, May 31, 1912.**

1. **CITIES: Ordinances: Conformity to State Laws.** All of the ordinances of the city of St. Louis must conform to relevant state laws, and they are invalid in so far as they are inconsistent therewith.

2. ————: **Powers.** A municipal corporation possesses and can exercise the following powers only: (1) Those granted in express words; (2) those necessarily or fairly implied in or incident to the powers expressly granted; (3) those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of a power is resolved by the courts against the corporation, and the power is denied.

3. ————: ————: **Nuisance.** A municipal corporation has no power by ordinance to declare that to be a nuisance which is not so in fact, or to suppress in part or *in toto* any business within its limits which is not a nuisance *per se*.

4. ————: ————: ————: **Wood Turning.** The maintenance within six hundred feet of Tower Grove Park in the city of St. Louis of a manufacturing plant for making altars, chancels and carved wood, in which plant three saws are operated, is not a nuisance *per se*, nor had it become a nuisance as carried on by the defendant. Hence the city of St. Louis had no power under its charter to prohibit or abate such manufactory. The city had no specific power under its charter to regulate it, nor any authority so to do under the general welfare clause or as a police regulation.

5. ————: **Police Power.** The police power is a necessary and wholesome faculty of municipal government, but it extends only to the regulation of employments prejudicial to the public safety, health, morals and good government of the citizens, and it "ends where those public interests are not beneficially served thereby." It cannot sanction the confiscation of private property for aesthetic purposes.

6. ————: **Powers: Unwarranted Exercise: Ordinance Forbidding Wood Turning Shop: Constitutional Question.** A provision in a city ordinance of St. Louis forbidding the maintenance of a manufacturing plant of any size within 600 feet of Tower Grove Park, is held to be an unwarranted exercise of power by the municipal assembly, unreasonable on its face, and if applied to the calling of defendant—that of making wooden chancels, altars, etc.—it would deprive him of the full use of his property without compensation and without due process of law. It is therefore void.

Appeal from St. Louis Court of Criminal Correction.—
*Hon. Wilson Taylor,* Judge.

Reversed.

*Leahy, Saunders & Barth* for appellant.

(1) This ordinance is in flat conflict with Laws 1871, p. 189, sec. 1. Also see Woerner's Rev. Code of St. Louis 1907, pp. 170-173, which undertakes to regulate the same subject-matter. The proviso in this ordinance is a curiosity. Apparently it gives the municipal assembly the right to establish nuisances by permit, and thereby ruin the property of others without compensation, whereas the ordinance itself destroys, without compensation, property which is not and could never be a nuisance. City ordinances must conform to State laws. Sec. 23, art. 9, Constitution; R. S. 1909, sec. 9582; art. 3, sec. 26, St. Louis Charter; St. Louis v. Meyer, 185 Mo. 583; St. Louis v. Tielkemeyer, 226 Mo. 130; State v. Stobie, 194 Mo. 15; St. Louis v. Williams, 235 Mo. 503; St. Louis v. Wortman, 213 Mo. 131. (2) The ordinance is unconstitutional, because in conflict with secs. 21 and 30, art. 2, Constitution, and

the Fourteenth Amendment to the Federal Constitution, in that it undertakes to deprive appellant of his property without any compensation, and without due process of law. St. Louis v. Dorr, 145 Mo. 466. (3) The ordinance is null and void, because it undertakes to declare something to be a nuisance which is not a nuisance at common law, and, under St. Louis v. Packing Co., 141 Mo. 375, St. Louis has no power to declare by ordinance anything to be a nuisance which is not a nuisance at common law. This ordinance undertakes to forbid all manufacturing within a distance of 600 feet of Tower Grove Park. Few forms of manufacturing are a nuisance, but under this ordinance the knitting of socks by three women, in one house, within 600 feet of the park, earning their living thereby, would be illegal. (4) The ordinance is unreasonable, and for that reason null and void. It applies only to Tower Grove Park.

*Lambert E. Walther* and *Byron F. Babbitt* for respondent.

(1) This ordinance, even though it be a police regulation, is entitled to a fair and reasonable construction, having in mind all the facts and circumstances surrounding the case. Railroad v. Carlinville, 103 Ill. App. 251; 28 Cyc. 38. (2) The ordinance in controversy is fair and reasonable, and is a proper exercise by the city of St. Louis of its police power, both under art. 9, secs. 20-25, of the State Constitution; and also under art. 3, sec. 26, subdivision 5, and paragraphs 6 to 14. St. Louis v. Frein, 9 Mo. App. 590; State v. Beattie, 16 Mo. App. 131; City v. Russell, 116 Mo. 248; St. Louis v. Jackson, 27 Mo. 37; Ex parte Lacey, 38 L. R. A. 640; Meeker v. Van Rensselaer, 15 Wendl. (N. Y.) 397; McKnight v. Toronto, 3 Ont. Reps. 284; Adv. Co. v. St. Louis, 235 Mo. 99.

BOND, C.—Defendant is the owner of a two and a half stock brick building on Arsenal street, within six hundred feet of Tower Grove Park, in the city of St. Louis. The building was erected under a permit issued by the building commissioner on October 29, 1907. The testimony tends to show, that subsequent to the ordinance hereinafter referred to it was used by defendant for making altars, chancels and carved wood, such as are used in churches; that the material of which these articles were constructed was prepared at planing mills and delivered at the residence of defendant; that he maintained there three saws, propelled by an electric motor, which were used in adapting the material for the purposes had in view; that he employed on an average of six men to assist in this work, which was conducted and carried on after the adoption of an ordinance enacted by the municipal assembly of the city of St. Louis on the 19th of November, 1907, to-wit:

"Be it ordained by the Municipal Assembly of the City of St. Louis, as follows:

"Section One. Hereafter it shall not be lawful for any person, company of persons, firm or corporation, to operate, conduct or carry on a stone quarry, or brick kiln, or soap factory, or candle factory, or slaughter house or garbage works, or bone factory, or rendering factory, or livery stable, or vitriol factory, or tannery, or sawmill, or planing mill, or furniture factory, or box factory, or boiler works or rolling mill, or lumber yard, or scrap-iron yard, or rag yard and warehouse or manufacturing plant of whatsoever size, wherein machinery of any kind whatsoever shall be maintained or operated by means of steam, electricity, gas or other motive power, in any building, or any lot of ground within six hundred feet of Tower Grove Park, without permission to do so has first been obtained from the Municipal Assembly by a proper ordinance; nor shall any existing

house, shed or structure be used, altered, changed, removed or repaired so as to establish, conduct, open, carry on or maintain any such business or occupation within said limits without similar authority. Any person, company of persons, firm or corporation violating the provisions of this ordinance shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than one hundred dollars for each and every day such stone quarry, brick kiln, soap factory, candle factory, slaughter house, garbage works, bone factory, rendering factory, livery stable, vitriol factory, tannery, sawmill, planing mill, furniture, factory, box factory, boiler works, rolling mill, lumber yard, scrap-iron yard, rag yard and warehouse or manufacturing plant, wherein machinery shall be maintained or operated by means of steam, electricity, gas or other motive power, at or in the premises occupied by them within six hundred feet of Tower Grove Park at the time of the passage of this ordinance.''

Defendant was charged with a violation of this ordinance by an information of the city attorney of St. Louis, filed in the police court, in that, on March 26, 1909, he ''did then and there unlawfully, and without permission so to do having by him been first obtained from the municipal assembly of the city of St. Louis, by a proper ordinance, operate, conduct and carry on a certain manufacturing plant for the manufacture of altars, chancel rails and other articles of church furniture, wherein is, and at said time or times was contained machinery of divers kinds and character, and which said machinery so contained in said premises as aforesaid, was and is maintained or operated by means of steam, electricity, gas or other motive power, contrary to the ordinance in such case made and provided.'' After a trial upon a plea of not guilty, defendant was discharged. An appeal was taken by the city to the St. Louis Court of Criminal Correction, where the defendant was again tried; and, upon

waiver of a jury, found guilty and fined $100. Defendant filed a motion for new trial, attacking the constitutionality of the ordinance for certain reasons, which will be adverted to as far as necessary in the opinion. After the overruling of his motion, he appealed to this court.

## OPINION.

I.　Tower Grove Park is a benefaction of Henry Shaw. It was created and is governed by statute. [Laws 1867, pp. 172-175.] It is not under the control and supervision of the park commissioner of St. Louis. [Charter of St. Louis, art. 8, sec. 1.] To protect it from contiguous nuisances enumerated therein, an act of the Legislature has been enacted forbidding their erection within the limits of one quarter of a mile in any direction from the exterior lines of the park. [Laws 1871, p. 189, sec. 1.] This city ordinance includes five of the callings mentioned in the legislative act and sixteen other callings not referred to in the act, and prohibits the existence of any of the occupations described in the ordinance within a radius of six hundred feet of Tower Grove Park. As far as the ordinance is inconsistent with the act it is invalid, since all ordinances of the city of St. Louis must conform to relevant state laws. [St. Louis v. Tielkemeyer, 226 Mo. 130; St. Louis v. Williams, 235 Mo. 503, and cases cited.] The information charges defendant with violating one of the callings mentioned in the ordinance which is not embraced in the state statute, to-wit: the maintenance and operation without permission evidenced by a proper ordinance of "a certain manufacturing plant for the manufacture of altars, chancel rails and other articles of church furniture" in his building, wherein was contained machinery operated by steam, electricity, gas or other motive power. Appellant insists that this provision of the ordinance is unconstitutional in that its enforcement would deprive

him of his property without compensation and without due process of law, and that it is unreasonable on its face. A municipal corporation only possesses and can exercise the following powers: (1) Those granted in express words; (2) those necessarily or fairly implied in or incident to the powers expressly granted; (3) those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied." [St. Louis v. Bell Telephone Co., 96 Mo. l. c. 628; St. Louis v. Eddy, 123 Mo. l. c. 557; City of Independence v. Cleveland, 167 Mo. 388.] In the exercise of such powers a municipal corporation can enact no ordinance which violates the Constitution of the State or the United States, or which contravenes the statutes and decisions of this State. It is the settled law that a municipal corporation "has no power by ordinance to declare that to be a nuisance which is not so in fact, or to suppress in part or *in toto* any business within its limits which is not a nuisance *per se.*" [St. Louis Gunning Co. v. St. Louis, 235 Mo. l. c. 147, et cases cited.] The clause of the ordinance upon which the information against defendant was framed refers to a calling which is not a nuisance *per se,* nor had it become such as carried on by defendant. Hence the city of St. Louis had no power under its charter to prohibit or abate it. It was a gainful occupation which the defendant was lawfully entitled to pursue in the manner which the evidence shows. The city had no specific power under its charter to regulate it, nor any authority so to do under the general welfare clause or as a police regulation. [St. Louis v. Dorr, 145 Mo. 466.] The police power is a necessary and wholesome faculty of municipal government, but it only extends to the regulation of employments prejudicial to the public safety, health, morals and good government of the citizenry, and it

"ends where those public interests are not beneficially served thereby." [Gunning Co. v. St. Louis, supra, l. c. 200.] It cannot sanction the confiscation of private property for aesthetic purposes. It was not shown in this case that there was any status of affairs in St. Louis which demanded the inclusion within this ordinance of a prohibition against the maintenance of a "manufacturing plant of whatsoever size, wherein machinery of any kind whatsoever shall be maintained or operated by means of steam, electricity, gas or other motive power, in any building, or any lot of ground within six hundred feet of Tower Grove Park."

We think this provision was an unwarranted exercise of power by the municipal assembly; that it is unreasonable on its face; and if applied to the calling of defendant, it would deprive him of the full uses of his property without compensation and without due process of law. It is therefore void and afforded no warrant whatever for his conviction by the lower court.

The judgment is reversed and the defendant discharged. *Brown, C.,* concurs.

PER CURIAM.—The foregoing opinion of Bond, C., is adopted as the opinion of the court. All the judges concur.