STATE OF MISSOURI at the Relation of BLUE SPRINGS, a Municipal Corporation, Relator, v. W. T. McWILLIAMS, as City Clerk of Blue Springs, and W. A. HIRE, as Treasurer of Blue Springs.—74 S. W. (2d) 363.

Court en Banc, July 31, 1934.

*Jerome Walsh, Andrew Ellison* and *Henry Depping* for relator.

*R. H. Musser* for respondents.

*Culver & Phillip, amici curiae.*

ATWOOD, J.—This is an original proceeding in mandamus, brought by Blue Springs, Missouri, a city of the fourth class, to compel the clerk and treasurer of that city to prepare, print, execute, attest and deliver to the United States of America, or its agency, the Federal Emergency Administration of Public Works, revenue bonds aggregating $80,000 payable to the United States of America, which the city by its Ordinance No. 51 elected to borrow of said Federal agency for use in constructing a waterworks plant to be owned by the city, subject to lien of the bonds on the plant and income therefrom, the principal and interest of which revenue bonds, it is alleged, are to be paid solely from the "earnings, increment and profit" arising from the operation of the plant. Attached to the petition as exhibits are letters from the clerk and treasurer, addressed to the city mayor and board of aldermen, declining to print, attest and deliver the bonds as ordered, together with a copy of the ordinance of the city authorizing the borrowing of the money, providing for issuance of the bonds and directing the clerk and treasurer to prepare, print, execute, attest and deliver the same as aforesaid.

The parties stipulated that the petition should be taken as and for the alternative writ. Respondents thereupon filed return wherein, among other things, they alleged "that said revenue bonds have not been approved, at an election held for that purpose, by two-thirds (2/3) of the legal voters of the city of Blue Springs, Missouri, as required by Section 7217, Revised Statutes of Missouri, 1929;" that there has "been no compliance with Sections 2915 and 2920 of the Revised Statutes of Missouri, 1929, requiring that said revenue bonds be presented to the State Auditor of Missouri for registration;" and that "on the date of the passage of said Ordinance No. 51 and on the date of the making of said application for said loan and grant, the indebtedness of the city of Blue Springs, Missouri, was five per cent of the total assessed valuation of the property within the limits of said city, and that should respondents carry out the orders and instructions of said Ordinance Number 51, they would be in the position of performing actions that were wholly useless and nugatory for the reasons hereinbefore stated, and as stated in the letters of respondents to the mayor and board of aldermen of the city of Blue Springs, Missouri, which are Exhibits 'D' and 'E' attached to re-

lator's amended petition for mandamus, and for the further reason that said revenue bonds would constitute an indebtedness of said city in excess of five per cent. (5%) of the total assessed valuation of the property within the limits of said city as prohibited by Section 12 of Article X of the Constitution of Missouri." Relator thereupon filed motion for judgment on the pleadings.

Relator's brief is addressed mainly to the proposition that "no indebtedness is incurred on the part of the relator within the meaning of the constitutional provisions by the issuance of so-called 'revenue bonds' payable solely from the income of the waterworks plant to be constructed from the proceeds thereof." A question more fundamental and possibly decisive of this case is whether or not relator has power to issue revenue bonds in the manner disclosed in this proceeding.

"It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers and no others: (1) those granted in express words; (2) those necessarily or fairly implied in or incident to the powers expressly granted; (3) those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied." [1 Dillon on Municipal Corporations (3 Ed.), sec. 89; St. Louis v. Bell Telephone Co., 96 Mo. 623, 628, 10 S. W. 197; City of Nevada to use of Gilfillan v. Eddy, 123 Mo. 546, 557, 558, 27 S. W. 471; City of Independence v. Cleveland, 167 Mo. 384, 388, 67 S. W. 216; St. Louis v. Dreisoerner, 243 Mo. 217, 223, 147 S. W. 998; Hays v. City of Poplar Bluff, 263 Mo. 516, 531, 532, 173 S. W. 676; Van Eaton v. Town of Sidney, 211 Iowa, 986, 231 N. W. 475.] As said by the Supreme Court of Iowa, speaking through DILLON, C. J., in City of Clinton v. Cedar Rapids, 24 Iowa, 455, 475: "Municipal corporations owe their origin to, and derive their powers and rights wholly from, the Legislature."

Another equally well-recognized principle of the law of municipal corporations is that where the Legislature has authorized a municipality to exercise a power and prescribed the manner of its exercise, the right to exercise the power given in any other manner is necessarily denied. [In re Frederick Knaup, 144 Mo. 653, 661, 46 S. W. 151; City of Nevada to use of Gilfillan v. Eddy, 123 Mo. 546, 558, 27 S. W. 471; State ex rel. Barlow v. Holtcamp, 332 Mo. 258, 14 S. W. (2d) 646, 650; Heidelberg v. St. Francois County, 100 Mo. 69, 74, 75, 12 S. W. 914; Ruggles v. Collier, 43 Mo. 353, 375, 376, 377; 1 McQuillin on Municipal Corporations, sec. 371.] As said by FIELD, C. J., in Zottman v. San Francisco, 20 Cal. 96, 102: "The mode in such cases constitutes the measure of the power."

■ The powers of all cities, towns and villages in Missouri to erect or purchase and maintain and operate waterworks, the manner in which such power shall be exercised and the limitations thereon, are found in Article 31, Chapter 38, Revised Statutes 1929, entitled "WATERWORKS, LIGHT AND POWER PLANTS." This article under this title first appeared as Article 20, Chapter 91, Revised Statutes 1899, and subsequently under the same title in the statutes of 1909, 1919 and 1929. In 1889 it appeared under the title "Miscellaneous Provisions." It consists of some forty-three sections dealing with various questions involved and imposing conditions that must be followed by cities in erecting, purchasing, maintaining and operating waterworks and other utilities and in selling their products. Sections 7641, 7651 and 7661 of this article all confer on cities of the fourth class the power to erect, maintain and operate waterworks, either by particularly designating such cities or by general inclusion. Consequently, there can be no doubt that the power has been conferred both by Constitution and statute on cities of the fourth class to erect, maintain and operate waterworks. The crucial question in this case is: Has the Legislature prescribed the manner and method of the exercise of this power and does the record in this case show that relator has met those requirements?

The only legislative source of power cited by relator is Section 7641, which merely confers the naked power on cities of the fourth class to erect or purchase and maintain and operate waterworks and to supply their inhabitants with water. Section 7651 also confers the same power and further authorizes such cities to establish a "board of public works." The power to erect or purchase waterworks is also conferred by Section 7661, as follows:

"The city council of any city of the first, second, third or fourth class in this State, or any city operating under a special charter, having three thousand inhabitants, or more and less than one hundred and fifty thousand inhabitants shall have the power to erect, maintain and operate waterworks or to acquire waterworks by purchase as hereinafter provided, and to operate and maintain the same and supply the inhabitants thereof with water and to charge therefor reasonable rates as hereinafter provided."

Sections 7669 and 7671 of Article 31, Chapter 38, Revised Statutes 1929, prescribe and limit the method of procedure "when there are no waterworks in operation in any such city, and the city shall desire to construct waterworks." The record before us discloses that relator is a city in which "there are no waterworks in operation." Hence, the method prescribed seems peculiarly applicable. Section 7669 is as follows:

"When there are no waterworks in operation in any such city, and the city shall desire to construct waterworks, the city council shall,

by ordinance, cause plans and specifications of the waterworks system to be constructed, to be duly made and filed in the office of the city clerk by the city engineer, or such other person as the council may designate, which plans and specifications shall give a full description of the plant to be constructed, the details thereof and the manner of construction; and the council shall cause the said engineer or the person so designated, to make the plans and specifications, to advertise for bids, and the council, by and through said city engineer, or such committee as the council may appoint, shall contract, *subject to the approval and ratification of the voters of said city*, as herein provided, with the person, firm or corporation who will agree to do the work on the lowest and best terms, and such persons, firm or corporation shall agree to accept, in payment for the construction of said plant, bonds issued under Sections 7661 to 7682, inclusive, and containing substantially the recitals as provided in Section 7668; and the advertisement for bids shall state, among other things, that the work is to be paid for by bonds issued under Sections 7661 to 7682, which will be a first lien in the nature of a mortgage or vendor's lien upon all the property, rights, issues and revenues of the waterworks system when erected, or in any way appertaining thereto, including any and all funds that may have been or may be derived therefrom, whether in existence at the time of the issuing of the bonds or thereafter acquired, but that the bonds shall not create any personal or general liability on the part of the city or the person signing them for the payment thereof, and that the same shall be paid only out of the property constituting the waterworks system and the revenue derived therefrom.''

Section 7670 requires a bond of the contractor, and Section 7671 reads as follows:

''The council shall then, by ordinance, submit the proposition to erect the waterworks system as provided in the contract, ordinance and other proceedings, and to pay for same by bonds issued as aforesaid, to the voters of said city, as provided in Section 7664. The proposition to be submitted at said election shall be:

'' 'To erect a waterworks plant and issue bonds in payment therefor, which shall be a first lien on the waterworks plant when erected, but no general or personal obligation of the city—Yes.'

'' 'To erect a waterworks plant and issue bonds in payment therefor, which shall be a first lien on the waterworks plant when erected, but no general or personal obligation of the city—No.'

''And if a majority of the voters of the city voting on the said proposition shall vote 'Yes,' then said contract shall be binding and in full force and effect, and said waterworks system shall be erected in accordance therewith, and, when erected and accepted by the city, bonds shall be issued in payment therefor to the contractor

under the terms of said contract, as provided for in Sections 7661 to 7682, and the title to the waterworks system, after it is erected, shall pass to and vest in the said city subject to the payment of the bonds issued in payment of the contract price for erecting same.''

It thus appears that "when there are no waterworks in operation in any such city," and such city desires to issue bonds to pay for the construction of waterworks the proposition must first be submitted to and approved by a majority of the voters of the city at a special election. It will also be noted that both of these sections by reference adopt the provisions of Sections 7661 to 7682, both inclusive, of the same article relating to the issuance of revenue bonds by cities "to acquire by purchase any waterworks system in operation." The terms and conditions of the bonds to be issued and the contract to be made for the erection of the waterworks are thereby made the same whether the city does or does not already have a waterworks, and submission of a proposition to acquire waterworks by the issuance of revenue bonds in both contingencies must be submitted to the voters of the city.

On oral argument counsel for relator suggested, and respondents in their printed brief say, that Sections 7661 to 7682, both inclusive, apply only to cities of three thousand inhabitants or more and less than one hundred and fifty thousand inhabitants (according to their interpretation of Sec. 7661), and that relator having only 706 inhabitants is not within the purview of these statutes. Also, in brief of *amicus curiae* it is suggested that the method set forth in certain of these statutes, to acquire waterworks by the issuance of bonds therefor secured by and payable "only out of the property constituting the waterworks system and the revenue derived therefrom," is not applicable to cities having a population of less than seventy-five thousand inhabitants because Section 12, Article X of the Constitution, adopted November 2, 1920, confers this right only upon cities of seventy-five thousand inhabitants or more and under the maxim of *"exclusio unius est exclusio alterius"* excludes other cities therefrom.

In view of the fact that relator has not chosen to pursue this method of acquiring waterworks we deem it unnecessary to rule these questions. Even if this method were available and acceptable to relator Sections 7674 and 7675 making it obligatory upon the city to pay hydrant rental, which together with rates to be paid by private consumers provide the fund for the payment of the principal of and interest on the bonds, would create an indebtedness obnoxious to the Constitution, if in excess of the limitations thereof, under our rulings in Hight v. City of Harrisonville, 328 Mo. 549, 41 S. W. (2d) 155. We are not advised of any other constitutional or statutory method whereby municipalities can in this State acquire waterworks by the

issuance of "public utilities" or "revenue" bonds, that is, bonds secured only by the waterworks system and payable solely out of revenue therefrom. However, even if this method is not available to relator it does not follow that the statutory method of exercising the power to acquire waterworks by the issuance of bonds payable by taxation is not available.

Section 7030, Revised Statutes 1929, which is a part of Article 8 of Chapter 38 governing cities of the fourth class, empowers the board of aldermen of such cities to borrow money and issue bonds, within constitutional limits, to pay for the erection or purchase of waterworks, but such bonds cannot be issued until two-thirds of the legal voters of the city, voting at an election held for that purpose, have assented thereto in accordance with pertinent sections in Article 10, Chapter 38, Revised Statutes 1929. While Section 12, Article X of the Constitution generally prohibits political subdivisions of the State becoming indebted in an amount "in the aggregate exceeding five per centum on the value of the taxable property therein," and respondents' return alleges that said revenue bonds would constitute an indebtedness of said city in excess of said five per cent limit, we find nothing in the pleadings suggesting that such indebtedness would exceed the limit of "an additional ten (10) per centum" allowed by Section 12a, Article X of the Constitution to any city containing not more than thirty thousand inhabitants, that, "with the assent of two-thirds (2/3) of the voters thereof voting at an election to be held for that purpose," would become indebted in a larger amount than specified in Section 12 of Article 10 of the Constitution for the "purpose of purchasing or constructing waterworks, ice plants, electric or other light plants, to be owned exclusively by the city so purchasing or constructing the same." Section 7400, Revised Statutes 1929, is an exact transcript of the latter constitutional provision. [Laws 1921, 1st Ex. Sess., p. 118.]

So, regardless of whether the revenue bonds here in question constitute indebtedness within the meaning of constitutional limitations thereon, this statutory method is also open to relator. Having failed to comply with the requirement, incident to each of the statutory methods provided, that assent be first procured of two-thirds of the city's inhabitants at an election held for the purpose of determining whether or not such bonds should be issued, it follows that relator is without authority to issue the bonds.

Assuming, without deciding, that relator could issue "public utilities" or "revenue" bonds with the statutory assent of two-thirds of its inhabitants, why does relator seek to evade such a submission of the question? An undertaking on the part of the city to maintain and operate such a utility necessarily entails the hazard of some loss, direct or indirect, of the general revenue, and the uniform legislative

policy of this State, evidenced by its Constitution and statutes, is that assent thereto of the inhabitants of the city at an election held for that purpose is essential. When the Legislature has expressly provided a method or methods by which a power conferred upon a municipality shall be exercised, the municipality has no implied power to exercise it in another manner. [Van Eaton v. Town of Sidney, 211 Iowa, 986, 231 N. W. 475, 478, and cases previously cited.]

Entertaining the views above expressed, it becomes unnecessary for us to discuss other points raised in the briefs. It is obvious that under the pleadings in the case relator is not entitled to our writ of mandamus and the alternative writ herein is quashed. All concur, except *Ellison, J.*, not sitting.