Bob C. MATHISON et al., Petitioners-
Appellants,

v.

PUBLIC WATER SUPPLY DISTRICT NO.
2 OF JACKSON COUNTY, Missouri,
Defendant-Respondent.

No. 51819.

Supreme Court of Missouri,
Division No. 1.

March 14, 1966.

Motion for Rehearing or to Transfer to Court
En Banc Denied April 11, 1966.

Preston H. Longino, Kansas City, Blaine E. Strader, Richard T. Cole, Raytown, for appellants.

Charles V. Garnett, Richard A. Erickson, Walter A. Raymond, Kansas City, for respondent.

HENLEY, Judge.

This is a proceeding under § 247.170, RSMo 1959,[1] by residents of the City of Raytown[2] as owners[3] of real estate located within the territory of defendant, Public Water Supply District Number Two of Jackson County, to detach and exclude from the District all that part of its territory lying within the corporate limits of the city. A

1. All references to statutes are to Revised Statutes of Missouri, 1959, and V.A.M.S.

2. A city of the fourth class.

3. Section 247.170 provides that the petition shall be signed by not less than twenty-five owners of real estate situated within the District. A statement in plaintiffs' brief, not denied, is that plaintiffs are 650 owners of real estate situated within the District.

motion to dismiss filed by defendant was sustained and the action dismissed. Plaintiffs appeal from that judgment.

Section 247.170 provides that "Whenever any city owning a waterworks or water supply system extends its corporate limits to include any part of the area in a public water supply district, and the city and the board of directors of the district are unable to agree upon a service, lease or sale agreement, or are unable to proceed under section 247.160, then upon the expiration of ninety days after the effective date of the extension of the city limits, that part of the area of the district included within the corporate limits of the city may be detached and excluded from the district in the following manner[.]" The "manner" provided describes these steps (excluding minor details) to be taken: (1) A petition "to detach and exclude" shall be filed in the circuit court of the county in which the district was organized; (2) "The court, being satisfied as to the sufficiency of the petition, shall * * * call a special election * * *" submitting to the qualified electors of the district the "proposal to detach and exclude the part of the district lying within the corporate limits of the city * * *"; (3) Notice of the election shall be given and published; (4) If the proposal is approved by a majority of the voters, "The court * * * shall * * * enter a decree detaching and excluding the area in question * * * from the * * * district."

Section 247.170 further provides that the decree mentioned in step (4) above shall not become final until the city shall show to the court that it has assumed and agreed to pay: (1) the court costs and costs of calling and holding the special election, and, (2) either in lump sum or in installments a certain porportion of all liquidated general obligations and of all unpaid revenue bonds and interest of the district.

Plaintiffs took the first step on July 26, 1965, by filing their petition alleging, inter alia, that: (1) the City of Raytown owns a water supply system; (2) all of the area of the defendant is now within the corporate limits of the city and has been for more than 90 days before filing the petition; (3) the city and the board of directiors of defendant are unable to agree upon a sale agreement of the assets of defendant, and are unable to proceed under § 247.160 because defendant refuses to proceed under that section; and, (4) the city has consented to the holding of the election. Plaintiffs prayed that the court call a special election in accordance with the statutes and if the proposal receives a favorable vote, that it decree that the area described be detached and excluded from the district. Defendant's motion to dismiss attacked the jurisdiction of the court over the subject matter of the action. Attached to and made a part of this motion was a copy of Ordinance No. 120 of the City of Raytown adopted July 6, 1965, a copy of a contract between the City of Raytown and Raytown Water Company, a corporation, and an affidavit of the president of defendant who was also a resident of the city.

Ordinance No. 120 authorized the city: (1) to purchase that part of the water distribution system of Raytown Water Company (hereinafter referred to as Water Company) lying south of 79th Street in the city and pay the purchase price from surplus in the city's general fund; and, (2) to operate and maintain a water supply system and supply water to its inhabitants as authorized by § 91.010. The contract between the Water Company and the City provided for the sale and purchase of the above-described distribution system for $62,-500, subject to the approval of the Public Service Commission of Missouri. The affidavit of the president of defendant discloses the following facts.

The purchase price of this water distribution system was paid by the city in one lump sum in July, 1965, out of surplus in the city's general fund. No part of the purchase price was paid by the issuance of general obligation or revenue bonds. The proposition of whether the city should acquire the water distribution system and

issue bonds in payment therefor has not been submitted to the electors of the city. Also in July, 1965, the Public Service Commission entered an order stating, in substance, that it "had no objection" to the sale by Water Company to the city. Both the Water Company and the Water District were formed and organized before the incorporation of the City of Raytown. Raytown Water Company is a privately owned corporation organized in 1925. It serves what is generally described as the northern portion of the city. The Water District was incorporated by decree of the circuit court of Jackson County in 1935, under what is now Chapter 247, RSMo 1959. It serves what is generally described as the southern portion of the city. The City of Raytown was incorporated as a fourth class city in July, 1950. The city's original boundaries included only a part of the territory of the Water District. By successive actions of the city in 1959, 1960 and 1961, additional territory of the Water District was annexed so that now all of its territory is within the corporate limits of the city. Before enactment of Ordinance No. 120 the city did not own or operate a water supply system, the inhabitants of the city being served exclusively by either the Water Company or the Water District. That portion of the system of the Water Company purchased by the city lies south of 79th Street and will supply water to approximately 300 of approximately 9000 city water users. This system is not physically connected with the balance of the Water Company's system, and will get its supply of water from the City of Kansas City through one of the latter's mains at the intersection of 81st Street Terrace and Blue Ridge Road. It is readily apparent from this description of the distribution system purchased by the city that it will serve the same area as that which the Water Company was denied a right to serve by order of the Public Service Commission as a result of the opinion and mandate of this court in the case of State ex rel. Public Water Supply District No. 2 of Jackson County, etc., v. Burton, et al., Mo.Sup., 379 S.W.2d 593.

The defendant alleges in its motion to dismiss that "the City does not own a waterworks or water supply system within the meaning of paragraph 1, of section 247.170" because Ordinance No. 120, and the acts of the city pursuant to the ordinance, are void for these reasons: (1) that the city could not acquire any right to serve water to those inhabitants of the city residing in the area south of 79th Street, because the Water District has the exclusive right and obligation to serve that area; (2) that the city was required by law to call a special election and submit the proposition of acquiring this waterworks system to its electors before its purchase; (3) that the purchase price for the waterworks system legally may be paid only by the issuance of revenue bonds approved by electors of the city and that payment of the purchase price from the city's general fund constitutes an unlawful appropriation from that fund; (4) that the ordinance is a local or special law violating Article III, § 40, subparagraph (30), Constitution of Missouri, V.A.M.S., in that it makes provision for distributing water only to those inhabitants of the city residing south of 79th Street rather than to all inhabitants; (5) that the city, being in privity with the Water Company, is bound by the order of the Public Service Commission and that that order is res judicata of any claim of right of either the Water Company or the city to serve this area; (6) that the contract between the Water Company and the city is an arbitrary and unlawful attempt by the city to aid the Water Company in circumventing the order of the Public Service Commission and the mandate of this court; (7) that the City of Raytown was not a "city owning a waterworks or water supply system" at any time before it extended its corporate limits to include the several parts of the area of the Water District. In sustaining this motion to dismiss, the trial court did not specify any particular ground or grounds on which it based its order and judgment.

The defendant contends that tax revenue on hand in the city's general fund may not be used to purchase a water distribution system; that the city is required to borrow money for such purpose, i. e., that the only revenue the city may use for this purpose is that produced by indebtedness evidenced by issuance of revenue bonds approved by its electors. Plaintiffs contend that revenue on hand in the year 1965 was properly available and used to pay the full purchase price. The issues presented for review relate to the disbursement of revenue and its preservation, and involve construction of the revenue laws of this state; hence, jurisdiction is vested in this court. Article V, § 3, Constitution of Missouri; State ex rel. Attorney General v. Adkins, 221 Mo. 112, 119 S.W. 1091; State ex rel. Pullum v. Consolidated School District No. 5 of Stoddard County, Mo., 233 S.W.2d 703 [1]; State ex rel. Ginger v. Palmer, Mo.App., 194 S.W.2d 736, 739 [1, 2] transferred to Supreme Court, 198 S.W.2d 10.

The first point briefed by both parties is essentially the same as that on which our jurisdiction is based, and to this point the parties devote the larger portion of their briefs. The defendant contends that Ordinance No. 120 is void; therefore, the City of Raytown is not "a city owning a waterworks" within the meaning of § 247.170. If the ordinance is void it follows as a matter of course that the city does not own a waterworks or water supply system, and if it does not own such works or system plaintiffs are in no position to maintain this action. The heart of defendant's theory is that the city may not acquire a waterworks by paying cash in one lump sum out of unencumbered surplus in its general fund, but that it must incur an indebtedness for this purpose. Parenthetically we note, this theory of compulsion to "buy now—pay later" is not foreign to the economic practices of twentieth century America. But

this parenthetical observation may be beside the point. The point is: may a city purchase a utility such as this by paying cash from its unencumbered, and otherwise unappropriated, surplus funds, or is it mandatory that it fund the purchase by debt.

Defendant insists that the city must submit to the electorate and secure its approval before it can own and operate a water system no matter what the source of the funds with which it is purchased; that, in any event, the exclusive method of procedure is to submit to its electorate at an election the proposition of acquiring the system and issuing revenue bonds in payment therefore as provided in § 91.120. In support of its argument defendant relies heavily on State ex rel. City of Blue Springs v. McWilliams, 335 Mo. 816, 74 S.W.2d 363.

In the Blue Springs case, supra, the city sought to borrow money by the issuance of revenue bonds to pay for the construction of a waterworks plant without first procuring the assent of the city's inhabitants to issue the bonds. The sole question presented in that case was whether the city could issue the bonds without first procuring the assent of the voters. The sole question determined is expressed in these words (1. c. 367): "Having failed to comply with the requirement * * * that assent be first procured * * * of the city's inhabitants at an election held for the purpose of determining whether or not such bonds should be issued, it follows that relator is without authority to issue the bonds." The question of whether or not a city may acquire a waterworks by paying for it from unencumbered surplus funds on hand was not presented or decided in that case. Nor is that narrow question presented or decided in any of the cases cited in the briefs of either plaintiffs[4] or defendant.[5] Nor do any of the cases cited

4. City of Springfield v. Monday, 353 Mo. 981, 185 S.W.2d 788; Missouri Service Company v. City of Stanberry, 341 Mo. 500, 108 S.W.2d 25.

5. State ex rel. City of Blue Springs v. McWilliams, 335 Mo. 816, 74 S.W.2d 363; City of Springfield v. Monday, 353 Mo. 981, 185 S.W.2d 788; City of Lebanon

by the parties present or decide the question raised by defendant's contention that the city must submit to its electorate and secure its approval before the city can own and operate a water system no matter what the source of the funds with which it is purchased.

■ Section 91.010 empowers cities, towns and villages to erect or to acquire waterworks, power plants, and other utilities, by purchase and to operate and maintain the same for the purpose of supplying water, power, etc., to its inhabitants. Other sections of Chapter 91 empower fourth (and other) class cities to incure indebtedness for the purpose of purchasing an existing waterworks (§ 91.120) or for the purpose of constructing a waterworks where none exists in the city (§ 91.170), and prescribe the method of procedure by which they may become indebted for those purposes. But to say such cities may incur indebtedness for those purposes is not to say they shall not purchase by paying for the water system from tax revenue. The grant of power to acquire a water system carries with it, by necessary implication, the authority to use money on hand as the means of payment. In a suit to enjoin the erection of a power plant, the sale of certain bonds to the federal government, and the receipt of a federal grant, this court, en banc, in Arkansas-Missouri Power Corporation v. City of Kennett, 348 Mo. 1108, 156 S.W.2d 913, 916[2], said: "It is not contended that the city was without the right to build a power plant of its own. Had there been no connection whatever between the city and PWA and *had the city planned to build this electric system with money derived from taxation* or with the proceeds of a lawful bond issue * * * its right so to do would be unquestioned." (emphasis supplied) "* * * ordinarily general

funds may be appropriated by the council to any municipal object." 15 McQuillin, Municipal Corporations, (third edition) § 39.45, pp. 134–135.

■ We hold that the city properly may acquire a waterworks or water supply system by purchase by the use of unencumbered, and otherwise unappropriated, surplus funds on hand in its general fund, and that by so doing, in this instance, the City of Raytown is the owner of a waterworks or water supply system within the meaning of § 247.170.

■ "As a general rule, the purchase of an existing plant * * * need not be submitted to a vote." 12 McQuillin, Municipal Corporations, (third edition) § 35.28, pp. 642–643. We hold that the city may own and operate a water system without first securing approval of its electorate.

■ Defendant also contends that the City of Raytown is not "a city owning a waterworks" within the meaning of § 247.-170 and, therefore, plaintiffs may not maintain this action, because the city's extension of its corporate limits to include the area of the Water District was before it acquired a water system. In other words, defendant says the city must first own a water system and thereafter annex part of defendant's area. Lifting § 247.170 out of chapter 247 and holding it up for examination alone might permit construction of its meaning to be that which defendant contends. But construing this section in relation to the balance of that chapter leads to the inescapable conclusion that the legislature intended that when a city annexed part or all of a Water District the area annexed might, by the prescribed procedure, be detached and excluded from the District so long as the city owned a water system when the action is instituted, without re-

v. Schneider, 349 Mo. 712, 163 S.W.2d 588; Dodds v. Kansas City, 347 Mo. 1193, 152 S.W.2d 128; Grossman v. Public Water Supply District No. 1 of Clay County, 339 Mo. 344, 96 S.W.2d 701; l. c. 706, et seq.; Kansas City v. Fishman, 362 Mo. 352, 241 S.W.2d 377; Missouri Service Company v. City of Stanberry, 341 Mo. 500, 108 S.W.2d 25; Sager v. City of Stanberry, 336 Mo. 213, 78 S.W. 2d 431.

gard to whether the system was acquired before or after annexation. The contention is without merit.

In Points II and III of its brief defendant takes the position that the city does not have and may not acquire any right to supply water to its inhabitants south of 79th Street, because: (1) defendant has the exclusive right and duty to serve that area, and, (2) the city is in privity with and has no more right in that area than the Water Company which was denied the right to serve this area by order of the Public Service Commission pursuant to the opinion of this court in the Burton case, supra. Defendant says it has the exclusive right to serve this area because "there cannot be two municipal agencies exercising the same power, jurisdiction and privileges over the same area at the same time; and, because the Water District has been created for a single *special* purpose, the legislature intended to withdraw the powers of the City (*general* power) from that special field." We do not agree that for these or any other reasons the Water District has exclusive right to serve the area in question. There may be reason why two municipal agencies should not exercise equal authority to distribute water in the same area, but, if so, it is our opinion that the legislature intended that as between a Water District organized under Chapter 247 and a city owning a waterworks, the city should have the exclusive right.

As authority for its position, defendant cites Wellston Fire Protection District of St. Louis County v. State Bank and Trust Co. of Wellston, Mo.App., 282 S.W.2d 171, and other cases. We have read and studied those cases; they do not support defendant's position; on the contrary, their basic reasoning supports plaintiffs. The Wellston case, supra, involved a dispute between the Fire District and the City of Wellston, a part of the Fire District, as to which had the authority to regulate the construction of buildings in the city with respect to fire prevention. The St. Louis Court of Ap-

peals recognized that to permit both the city and the Fire District to exercise equal authority at the same time, in the same area, in the same field, could result in intolerable confusion, and held that the legislature did not intend that result in enacting Chapter 321 authorizing the establishment of Fire Protection Districts. In analyzing Chapter 321 to determine the intent of the legislature the court noted specifically that such a district may include within its boundaries an entire city. The court said that notwithstanding the fact that the lawmakers had knowledge that the city had power to promulgate regulations for fire prevention yet it authorized the district, having the same powers, to include the city within its boundaries. The court concluded that since the legislature was cognizant of the fact that the city then had authority to regulate for fire prevention in the same area it was empowering the Fire District to exercise like authority and that since this could result in intolerable confusion, the legislature intended to and did withdraw such authority from the city.

Section 247.010 states that the purpose of Sections 247.010 to 247.220, applicable to county public water supply districts, is to " * * * make possible * * * conviences in the use of water * * * to many inhabitants of our state now denied such privileges * * *." Section 247.030 provides that the territory of the district shall be contiguous and may include " * * cities that *do not have* a waterworks system." (emphasis supplied) Section 247.-160 provides that whenever all or any part of a district is or has been included by annexation within the corporate limits of a city the district shall have the power to contract with the municipality for operating the system within the annexed area or to lease or sell any or all its assets within the annexed area to the city. Section 247.-170 provides for detaching and excluding from the district an area annexed by the city whenever " * * * the city and * * the district are unable to agree upon a service, lease or sale agreement, or are unable

to proceed under section 247.160" for any other reason. (emphasis supplied)

It is apparent from our analysis of those sections of Chapter 247 applicable to county water supply districts that the legislature intended that such districts, at the time of their organization and thereafter, serve only those areas not otherwise served with water. Otherwise the legislature would not have by implication in § 247.030 excluded from the initial territory of the district those cities having a water supply system; nor would the legislature have provided a method (§ 247.170) whereby the city could, as it grew, acquire the assets of a district lying within an area annexed by the city, without the consent or agreement of the district. It is obvious that the legislature did not intend that both the city and the district distribute water in the same area at the same time, otherwise it would have defeated the purpose expressed in § 247.010. It is just as obvious that the legislature intended that initially and ultimately the one of the two to be excluded from supplying water within the corporate limits of a city owning a water system is the district. For the reasons stated, we hold that, as against the city, the defendant does not have the exclusive right to serve the area of the district lying within the corporate limits of the city.

■ We do not find merit in the contention of defendant that the city does not have and may not acquire any right to supply water to this area because the city is in privity with the Water Company and is privy to the order of the Public Service Commission entered before the city acquired this system. The order of the Public Service Commission, and the Burton case, supra, on which that order was based, directed that Raytown Water Company cease and desist supplying water in the area south of 79th Street merely because the certificate of authority granted the Water Company by the Commission in 1925 did not authorize the Water Company to provide service in that area; that its "territory" described in the certificate did not include that area. "Privity" as used in the doctrine res judicata means mutual or successive relationships to the *same rights or property constituting the subject matter of the litigation;* and to make one "privy" to an action he must have acquired his interest in the subject matter of the action subsequent to the commencement of the suit or rendition of judgment. 50 C.J.S. Judgments § 788, p. 324; Womach v. City of St. Joseph, 201 Mo. 467, 100 S.W. 443, 445–46, 10 L.R.A., N.S., 140; National Lead Co. v. Nulsen, 8 Cir., 131 F.2d 51, 56 [7]. The right or property constituting the subject matter of the Burton case, supra, and the order of the Public Service Commission was the right vel non of the Water Company to supply water to the area south of 79th Street under its certificate of authority from the Public Service Commission. The city purchased only the assets of the Water Company in the disputed area; it did not purchase the certificate of authority of the Water Company; and, it is not claiming the right to serve the area under or by virtue of any authority or right of the Water Company to serve the area. Indeed it could not so claim, because the Water Company had no right to serve the area. The only authority and right under which the city may, and does, claim is that granted by § 91.010.

■ For the reasons stated, we hold that the city is not in privity with the Water Company and is not privy to the order of the Public Service Commission.

■ We notice too that what is now § 247.170 was a part of what is now Chapter 247 when defendant was organized under that chapter; consequently, whatever rights defendant acquired by its organization are subject to the rights granted a city by § 247.170.

One of the grounds for dismissal urged in defendant's motion is that Ordinance No. 120 is void because it is a local or special

law in that it makes provision for supplying water only to those inhabitants of the city residing south of 79th Street, rather than to all inhabitants; that therefore it violates Article III, § 40 Subparagraph (30), Constitution of Missouri. Plaintiffs discuss this point in their Point IV; defendant ignores the point in its brief.

■ Ordinance No. 120 has a two-fold purpose: (1) to authorize the city " * * * to engage in the water supply business" and provide " * * * water to inhabitants within its corporate limits"; and, (2) to purchase and pay for that portion of the water supply system of Raytown Water Company located south of 79th Street. Article III, § 40, subsection (30), provides that the general assembly shall not pass any local or special law where a general law can be made applicable. We have held that this constitutional provision applies to municipal as well as state legislation. McKaig v. Kansas City, 363 Mo. 1033, 256 S.W.2d 815, 816 [2]; Laclede Power & Light Co. v. City of St. Louis, 353 Mo. 67, 182 S.W.2d 70, 72 [1]. We must first determine whether or not this ordinance is a local or special law. If the answer is "no", our inquiry ends and we must hold the ordinance constitutional. If the answer is "yes", we must determine whether a general law could have been made applicable. City of Springfield v. Smith, 322 Mo. 1129, 19 S.W.2d 1, 9 [12].

The definition and tests frequently employed to distinguish special or local from general legislation has been stated thus: " 'A statute which relates to persons or things as a class, is a general law, while a statute which relates to particular persons or things of a class is special * * *.' " " * * * 'The test of a special law is the appropriateness of its provisions to the objects that it excludes. It is not, therefore, what a law includes, that makes it special, but what it excludes.' " * * * "If in fact the act is by its terms or 'in its practical operation, it can only apply to particular persons or things of a class, then it will be a

special or local law, however carefully its character may be concealed by form of words.' " Reals v. Courson, 349 Mo. 1193, 164 S.W.2d 306, 307–308 [1–5]; Laclede Power & Light Co. v. City of St. Louis, supra, 182 S.W.2d l. c. 72 [2–4].

This ordinance cannot be said to be a local or special law unless it be so characterized because it provides, in part, for the purchase of a relatively small water distribution system, a system that will, in the beginning at least, serve only a small portion of its inhabitants. We consider it reasonable to assume that this is only a beginning of the city's entry into the field of supplying water to its inhabitants. It is true that this is a small "beginning", but if, in the judgment of its elected officials, it is in the interest of its inhabitants that the city enter the water supply business, it must begin somewhere, at some time, in some manner. And our assumption that this is only a "beginning" is buttressed by the fact that the city also seeks to acquire through this action instituted by plaintiffs, the whole of the system of defendant. Obviously this is only the first step toward engaging "in the water supply business [for the purpose of providing] water to inhabitants within its corporate limits", and the second or next logical step toward that end is to acquire the system of defendant.

■ We do not consider that because this ordinance, in addition to its other stated purpose, provides for the acquisition of a water supply system that will serve initially only a very small portion of its inhabitants, it may be classified as a local or special law. The first purpose mentioned in the ordinance is to authorize the city to engage in the water supply business and provide water to inhabitants within its corporate limits. Applying the above tests, it is apparent that the ordinance does not relate to particular persons of a class, to particular inhabitants of the city; although, in practical operation, the small system purchased may not in the beginning serve all persons, it is apparent that the primary purpose of the ordinance relates to all inhabi-

tants of the city and excludes none. Therefore, we hold that the ordinance is not a local or special law within the meaning of the constitutional prohibition against such legislation.

Plaintiffs contend in Point I of their brief that defendant is not a citizen, resident or taxpayer of the city and has no standing to attack the ordinance. We chose to discuss and dispose of points attacking plaintiffs' right to maintain the action, considering those points of greater import than plaintiffs' point attacking defendant's standing. Having disposed of those points in plaintiffs' favor it is unnecessary that we discuss plaintiffs' Point I.

The judgment is reversed and the cause remanded with directions that the court proceed with the action in accordance with the views herein expressed.

All concur.