A. R. PEARSON, August G. Strubberg, John Arendall, Ambrose H. Volmert, T. E. Jacobs, Leo E. Parmenter, Bill Obermark, Frank C. Mense, F. Sida, Frank A. Nouss, Renee M. Nouss, and Charles J. Huether, Respondents,

v.

CITY OF WASHINGTON, a municipal corporation; August G. Strubberg, Mayor of the City of Washington, a municipal corporation; George E. Bocklage, Councilman: Grover H. Crismon, Jr., Councilman: William O. Eckelkamp, Councilman: George F. Gehlert, Councilman: Kenneth C. Haberberger, Councilman: Maurice F. Kamler, Councilman: Kenneth H. Sullentrub, Councilman: Walter H. Wunderlich, Councilman: and Kent D. Leichliter, City Administrator, Appellants.

No. 53782.

Supreme Court of Missouri,
Division No. 2.

April 14, 1969.

757

James A. Cole, Union, Cox & Moffitt, William A. Moffitt, Jr., St. Louis, for respondents.

Leo A. Politte and Emil L. Poertner, Washington, for appellants.

STOCKARD, Commissioner.

Defendants have appealed from the judgment of the trial court holding Ordi-

nance 3297 of the City of Washington, Missouri, to be in violation of certain statutes and therefore invalid. Respondents pleaded, and in their brief to this court they contend that the ordinance is also in violation of two provisions of the Constitution of this state, an issue that would require adjudication if a reviewing court ruled that the ordinance did not violate the statutes. Therefore even though this appeal may be disposed of without reaching the constitutional issue, jurisdiction is still in this court. McCord v. Missouri Crooked River Backwater Levee Dist. of Ray County, Mo., 295 S.W.2d 42; City of St. Louis v. Flynn, Mo., 386 S.W.2d 44.

On September 6, 1966, the council of the City of Washington, enacted over the veto of the mayor, Ordinance 3297, which in its parts material to this appeal provided as follows:

"BE IT ORDAINED by the City Council of the City of Washington, Missouri as follows:

SECTION 1. *Creation of Office:* The Office of 'City Administrator' is hereby created.

SECTION 2. *Appointment of City Administrator:* The 'City Administrator' shall be appointed by the Mayor of the City of Washington with the advice and approval of a majority of the members of the City Council.

SECTION 3. *Qualifications:* The City Administrator shall have the following qualifications: * * * He shall be and/or become a resident of the City of Washington within thirty (30) days of his appointment by the Mayor and the City Council unless further time is granted by the City Council.

SECTION 4. *Duties and Powers:* The City Administrator shall be the Chief Administrative Officer of the City government and shall supervise the enforcement of the Laws of the City and he shall execute and supervise the enforcement of all ordinances, rules, regulations, orders and directives promulgated by the Mayor and Council and he shall:

(a) (Duties:) Immediately upon taking office, the City Administrator shall draft and present to the City Council of Washington, Missouri, for their appropriate action, an Administrative Code dividing the Administrative Service of the City of Washington into Departments under the City Administrator, prescribing Administrative policy and procedure and also prescribing the functions and duties of the adminstrative units and officials of the government.

(b) The City Administrator upon taking office and in connection with the drafting of the Administrative Code, shall draft and present to the City Council for their appropriate action, a personnel wage classification system for all officers and employees of the City of Washington, Missouri, which shall include a standard schedule of pay for each appointive office and position in the city service, including minimum, intermediate and maximum rates.

(c) The City Administrator shall have the power to appoint, dismiss, suspend and discipline officers and employees in the Administrative Service under his control except as otherwise provided by law.

(d) He shall designate himself or some other officer or employee to perform the duties of any office or position in the administrative service under his control which is vacant or which lacks administration due to the absence or disability of the incumbent.

(e) The City Administrator shall prepare and present to the City Council an annual report of the City's affairs, including a summary of reports of department heads, and such other reports as the City Council shall require.

(f) The City Administrator shall assemble estimates of the financial needs and resources of the City for each ensuing year, and shall prepare a program of activities within the financial power of the City, em-

bodying it in a budget document with proper supporting schedules and analyses and shall keep the Council advised of the financial condition and future needs of the City and make such recommendations as he may deem desirable.

(g) At all times the actions of the City Administrator shall be subject to supervision and control and direction by the Mayor and City Council acting as a unit, and shall account to the Mayor and City Council for any actions taken when requested to do so.

(h) The City Administrator shall aid in the preparation of the agenda of all regular and special sessions of the City Council. He shall attend substantially all meetings of the City Council; assemble detailed reports pertinent to the agenda with recommendations of various committees concerning the matter to be discussed.

(i) He shall supervise the purchase of all materials, supplies, and equipment for which funds are provided in the budget; let contracts necessary for operation or maintenance of city services for amounts up to and including $500.00, receive sealed bids for purchases or contracts in excess of $500.00 and present them to the Council for approval, and advise the Council on the advantage or disadvantages of the contract and bid proposals. No purchase shall be made, which exceeds the current budget appropriation without a supplemental appropriation by the council. No contract in excess of $500.00 and no contract for new construction shall be let except by the City Council. The administrator may issue such rules as may be necessary governing purchasing procedures within the administrative organization.

(j) He shall insure the efficient use of all property owned by the City. He shall be prepared at all times to provide an accurate accounting of all property owned by the City. He shall insure that all such property is properly maintained and protected.

(k) He shall, in regard to public utilities in the city, see that all franchises are faithfully observed. It shall also be his duty to see that all such other permits or privileges as granted by the City shall be faithfully observed.

(*l*) The City Administrator shall recommend to the governing body (from time to time) adoption of such measures as he may deem necessary or expedient for the health, safety, or welfare of the community or for the improvement of administrative services.

(m) He shall devote his entire time to the discharge of his official duties as City Administrator.

(a) (Powers:) The City Administrator shall have the power to assign any employee of the City to any department or branch thereof requiring services.

(b) He shall have the power to prescribe such rules and regulations as are necessary or expedient for the conduct of administrative agencies subject to his authority, and he shall have the power to revoke, suspend, or amend any rule or regulation of the Administrative Service.

(c) He shall have the power, either by himself or by any officer or person designated for the purpose by him to investigate and to examine or inquire into the affairs or operation of any department, division, bureau or office, and when so authorized by the City Council he shall have the power to employ consultants and professional counsel to aid in such investigations, examinations, or inquiries.

(d) He shall have the power to advise all boards, committees, agencies, department or officials of the City concerning matters within their appropriate area of responsibility. It shall be the duty of the City Administrator to recommend such changes, alterations or activities in the conduct of City affairs as he shall deem conducive to greater efficiency and economy.

(e) He shall have the power to set aside any action taken by a department head and may supersede him in the functions of his office.

(f) He shall have the power to direct any department to perform the work for any other department.

(g) The City Administrator shall have the power to designate from the administrative service such committees and the officers thereof as he shall find necessary for the proper consideration of administrative problems.

(h) He shall have the power to appear before and address the City Council at any meeting.

(i) At no time shall the powers or duties of the City Administrator supersede the action of the Mayor and the City Council.

SECTION 5. *COUNCIL NOT To Interfere with Appointments or Removals:* Neither the council nor any of its members shall direct or request the appointment of any person to, or his removal from, office by the City Administrator or any of his subordinates, or in any manner take part in the appointment or removal of officers and employees in the administrative services of the city. Except for the purpose of inquiry, the council and its members shall deal with the administrative service solely through the City Administrator and neither the council nor any member thereof shall give orders to any subordinates of the City Administrator, either publicly or privately.

\* \* \* \* \* \*

SECTION 9. *Saving Clause*: If any section, subsection, or sentence, clause, or phrase of this ordinance if for any reason held invalid, such decision or decisions shall not effect the validity of the remaining portions of this ordinance. All ordinances of the City prescribing the duties of heads of departments shall remain in full force and effect except in so far as they conflict with the provisions of this ordi-

nance in which case the provisions of this ordinance shall govern."

The City of Washington is a city of the third class organized and operating pursuant to Chapter 77 (all statutory references are to RSMo 1959, V.A.M.S.), generally known as the Mayor-Council form of government. Shortly prior to the enactment of Ordinance 3297, the electors of the City of Washington voted down a proposal submitted pursuant to § 75.430 that the city be organized under §§ 78.430 to 78.640, known as the City Manager form of government, one of the two alternative forms authorized by Chapter 78.

Municipal corporations owe their origins to, and derive their powers and rights wholly from the state, and "where the Legislature has authorized a municipality to exercise a power and prescribed the manner of its exercise, the right to exercise the power given in any other manner is necessarily denied." State ex rel. City of Blue Springs v. McWilliams, 335 Mo. 816, 74 S.W.2d 363; State ex rel. Skrainka Const. Co. v. Reber, 226 Mo. 229, 126 S.W. 397. In the exercise of the legislative powers granted to it by the Legislature, a municipal corporation can enact no ordinance which violates the Constitution of this state or the United States, or "which contravenes the statutes" of this state. City of St. Louis v. Dreisoerner, 243 Mo. 217, 147 S.W. 998, 41 L.R.A.,N.S., 177. While in some situations a city may by ordinance regulate the administrative or ministerial duties of an officer, State ex rel. Skrainka Const. Co. v. Reber, supra, it has no power, in the absence of a charter or statutory provision conferring it, to transfer by ordinance to another those duties of an officer which are assigned to him by charter or statute. 62 C.J.S. Municipal Corporations § 545, p. 1007. Also, it is well established that a municipal corporation cannot surrender or contract away its governmental functions and powers. Stewart v. City of Springfield, 350 Mo. 234, 165 S.W.2d 626; Aquamsi Land Co. v. City of Cape Girardeau, 346 Mo. 524, 142 S.W.2d 332. For

example, when by statute or charter it is provided that the council shall by ordinance establish a schedule of compensation for officers and employees of the city, the council cannot by ordinance confer such power upon a city manager, State ex rel. Rothrum v. Darby, 345 Mo. 1002, 137 S.W.2d 532, but in performing this duty the council, if it so desires, may consider the recommendations of a city manager or any other person.

When we examine Chapter 77, we find, generally speaking, that the Legislature has established a form of government for cities of the third class in which the city council is granted the legislative functions and the mayor is invested with the executive functions, with certain checks and balances characteristic of a representative form of government. We shall not examine each section of Chapter 77 in detail, but will set forth the provisions of a few. § 77.250 provides, among other things, that the mayor "shall have the superintending control of all the officers and affairs of the city, and shall take care that the ordinances of the city and the state laws relating to such city are complied with." § 77.260 invests the "mayor and council" with the "care, management and control of the city and its finances," and with the power to enact all ordinances, with the limitation in § 77.250 on the right of the mayor to vote. § 77.330 provides that the mayor, with the consent and approval of a majority of the members elected to the city council, shall have power to appoint a street commissioner and "such other officers as he may be authorized by ordinance to appoint." The right of removal of an officer or an employee is provided for by § 77.340, and the authority, depending upon the circumstances, is placed in the mayor with the consent of a majority of the council or in two-thirds of the council.

■ The trial court held that the provision in Section 4 of the ordinance which provided that the City Administrator shall be the "Chief Administrative Officer of the City government and shall supervise the enforcement of the Laws of the City and * * * shall execute and supervise the enforcement of all ordinances, rules, regulations, orders and directives promulgated by the Mayor and Council * * *" violated §§ 77.260 and 77.350, and we agree. The statutes place this duty in the mayor. While the mayor may obtain help and advice on these matters from a city employee, whether or not he be called a City Administrator, the ordinance purports to transfer this right and duty from the mayor to an employee of the city contrary to the terms of the statutes.

■ The trial court also held Section 4(c) under "Duties" to violate §§ 77.320, 77.330, 77.340 and 77.450. This subsection purports to invest the City Administrator with the power to "appoint, dismiss, suspend and discipline officers and employees in the Administrative Service under his control," and it then contains the phrase, "except as otherwise provided by law." The last phrase may be said to cause this provision of the ordinance not to be in conflict with the statutes, but the powers and duties mentioned in this subsection of the ordinance are placed in the mayor and the council, and they cannot by ordinance be delegated to others. Therefore, Section 4(c) is in conflict with the statutes insofar as it purports to delegate to the City Administrator any of the powers enumerated therein.

■ Section 4(l) under "Duties" was held to be in conflict with § 77.290. We do not agree. § 77.290 requires the mayor to communicate to the council "such measures as may, in his opinion, tend to the improvement of the finances, the police, health, security, ornament, comfort and general prosperity of the city." Section 4(l) requires that the City Administrator "recommend to the governing body (from time to time) adoption of such measures as he may deem necessary or expedient for the health, safety, or welfare of the community or for the improvement of the adminis-

trative services." This is the privilege of any resident of the city, and the ordinance in no way attempts to dilute the duty or right of the mayor to perform his statutory duty in this respect.

Section 4(b) under "Powers" was held to violate § 77.260, and we agree. The power and duty to make "rules and regulations as may be deemed necessary to carry * * * into effect" the ordinances pertaining to the "care, management and control of the city" is placed in the "mayor and council" by § 77.260, and that power and duty cannot be delegated by the council to some appointed employee of the city.

Section 5 of the ordinance, in effect, denies the council any right or authority to regulate or control the selection or retention of employees of the city in what is termed the administrative service. This was held by the trial court to violate §§ 77.330 and 77.340, and we agree. Those statutes vest these powers and duties in the mayor and council and they cannot be delegated.

Section 3 of the ordinance provides that the City Administrator shall be or become a resident of the city within thirty days of his appointment unless further time is provided by the city council, § 77.-400 provides that an "officer" is any person holding "any situation under the city government * * * with an annual salary, or for a definite term of office." It was stipulated that the salary of the City Administrator was "set at $8,500.00 per year." § 77.380 provides that "all officers elected or appointed to offices under the city government shall be qualified voters under the laws and, constitution of this state and the ordinances of the city, and, except the city sextons, must be residents of the city." We understand the ruling of the trial court to be that the ordinance cannot reduce these statutory qualifications, and that its provisions purporting to do so are void. We agree.

The trial court also held that "Ordinance No. 3297" in its entirety is null and void, and that the appointment of the City Administrator was "illegal and void." However, the ordinance contains what is known as a "saving clause" which provides that if any section or provision is held invalid, the validity of the remaining portions should not be affected. It is the general rule that even though an ordinance contains invalid provisions the remainder of the ordinance should not be stricken down as "void" unless it may be found judicially that the City Council would not have passed the entire enactment if it had known of such invalidity. City of Springfield v. Stevens, 358 Mo. 699, 216 S.W.2d 450; City of Rolla v. Riden, Mo.App., 349 S.W. 2d 255. The ordinance creates the office of City Administrator (but it is immaterial what title is given it) and provides that the appointment be made by the mayor with the advice and approval of the council. See § 77.330. By the ordinance the City Administrator is given certain powers and duties such as making studies, investigations and reports, and advising the council, boards, committees and agencies of the city. There is no contention that the city was without authority to do this, or that the whole ordinance must be held to be invalid for constitutional reasons. We cannot say that the council would not have passed Ordinance 3297 containing these provisions if it had known of the invalidity of those provisions herein held invalid.

We reverse those portions of the judgment which hold: (1) the entire ordinance to be invalid, (2) that the appointment of the City Administrator was "void," and (3) that Section 4(l) of the ordinance under "Duties" is void. We do not express any views concerning the validity of any particular provision of the ordinance not herein expressly held to be valid, or herein held to be void on the basis that it is in conflict with controlling statutes. Such issues have not been presented by the pleadings or judgment of the trial court.

The judgment of the trial court is reversed in the respects above noted; otherwise it is affirmed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.