HINZ, Com'r, etc., of City of Sand Springs, v. HUBBARD et al., Com'rs of City of Sand Springs.

No. 13491—Opinion Filed May 22, 1923.

(Syllabus.)

1. Municipal Corporations — Adoption of Charter—Effect as Organic Law.

A city charter, when adopted by the people and approved by the Governor pursuant to section 329, art. 18, Williams' Constitution, becomes the organic law of the city, and the provisions of the charter supersede all laws of the state in conflict with such charter provisions, in so far as such laws relate to purely municipal matters.

2. Same—Matters of Local Concern—Form of City Government.

Whether the powers of the city are exercised by a mayor and a city council or by

a board of commissioners is purely a matter of municipal anl local concern, which in no manner interferes with or infringes upon matters of the state at large or affects its people generally.

### 3. Same—Scope of Powers of Legislature.

While the Legislature of the state may impose upon the local officers of a charter city specific duties in the matter of the enforcement of the laws of the state having force and effect within the city, and may provide penalties for failure to discharge such duties, and in respect to the duties here imposed the municipality and its officers are the agents of the state and subject to its command and control at all times, the Legislature has not the power to impose upon a charter city any particular form of city government contrary to the provisions of the city charter.

### 4. Same—Municipal Powers and Officers.

The form of government of a charter city being purely a matter of municipal concern, the provisions of the charter must control in both the matter of declaring the form of government to be adopted and the distribution of municipal powers and duties among the municipal officers.

### 5. Same—Construction of Charter—Transfer of Official Duties.

Record examined, and held, that under the proviso of section 5, art. 3 of the charter of the city of Sand Springs, the board of commissioners may transfer the duties devolving upon any commissioner so that the same shall be performed by any other commissioner when the efficiency of the public service or the best interest of the city demands such change.

### 6. Same—Affirmance of Judgment.

For the reasons stated, the judgment of the trial court is affirmed.

Error from District Court, Tulsa County; Redmond S. Cole, Judge.

Injunction by L. C. Hinz, as Commissioner of Public Affairs and Safety and Ex-Officio Mayor of the City of Sand Springs, against E. H. Hubbard and W. S. Cash, as Commissioners of Sand Springs. Judgment for fendants, and plaintiff brings error. Affirmed.

F. E. Riddle and H. A. Grove, for plaintiff in error.

Poe & Lundy and Paul P. Pinkerton, for defendants in error.

KANE, J. This was a suit in equity commenced by plaintiff in error, plaintiff below, seeking to enjoin the defendants in error, defendants below, from the enforcement of a certain resolution passed by the commission of the city of Sand Springs for the purpose of divesting the plaintiff, as commissioner of public affairs and safety and ex-officio mayor of said city, of his authority and jurisdiction as head of the police department and vesting the same in the defendant W. S. Cash, as commissioner of streets and public property.

Upon trial to the court the relief prayed for was denied, and it is to reverse this action that this proceeding in error was commenced.

The city of Sand Springs is operating under a charter adopted pursuant to the Constitution and laws of the state, which provide for what is known as a commission form of government.

It is contended on the part of the plaintiff that the charter of the city having specifically made the commissioner of public affairs and safety ex-officio mayor, head of the police department, and enjoined upon him the duty of enforcing the laws of the city, such powers and duties were not and cannot be vested elsewhere by the other two commissioners under a proviso to section 5 of the charter authorizing the transfer of duties from one commissioner to another when the public service requires it.

This contention, we think, raises the only question for decision properly involved in the record before us, and it is apparent that the answer to the question turns upon the construction to be given to the proviso of the city charter just mentioned, pursuant to which, it is claimed, the objectionable resolution was passed.

Many cities of the state have adopted charters providing for various forms of city government, and it is well settled by a long line of decisions that a charter adopted pursuant to the Constitution of the state constitutes the organic law for the government of the city, and that in purely municipal matters, affecting the city only, such charter is supreme, provided it is not in conflict with the Constitution of the state.

The latest expression of this court along that line is in Re Initiative Petition. City of Okmulgee. 89 Okla. 134, 214 Pac. 186, wherein it was held that a city charter, when adopted by the people and approved by the Governor pursuant to section 329, art. 18, Williams' Constitution, becomes the organic law of the city, and the provisions of the charter supersede all laws of the state in conflict with such charter provisions in so far as such laws relate to purely municipal matters.

This case also holds that where a city charter contains provisions providing the

method of its own amendment, revision, or its entire abrogation by the adoption of a new charter, the method thus provided is exclusive, and that it is beyond the power of the state Legislature to run counter to the provisions of the charter, or to interfere with the municipal authorities and the inhabitants of the city in this matter of purely municipal concern.

It is also well settled that whether the powers of the city are exercised by a mayor and a city council, or by a board of commissioners, is purely a matter of municipal and local concern, which in no manner interferes with or infringes upon matters of the state at large or affects its people generally, and where such provisions of the city charter are not in conflict with any provision of the Constitution, they supersede the statute law of the state in conflict therewith. Lackey et al. v. State ex rel. Grant et al., 29 Okla. 255, 116 Pac. 113.

With these preliminary questions out of the way, we will now proceed to construe the provisions of the charter involved in this case.

The charter, as we have said, provides for a commission form of government, and the particular sections thereof which it will be necessary to notice are section 7 of art. 1, providing that the exercise of power of said city shall be vested in, and all powers exercised by, its board of commissioners except as otherwise herein provided, subject to distribution and delegation in the manner herein provided; section 1, art. 2, providing that the elective officers shall be a commissioner of public affairs and safety, a commissioner of finance and accounts, and a commissioner of streets and public property, each of whom shall be elected at large by the qualified electors of the city; section 7, art. 2, entitled "Legislative Powers," and section 7, art. 7, providing that the provisions of the charter are self-executing.

The foregoing is a sufficient summary of the provisions of the charter for our purpose, except section 5 of art. 3, upon which this controversy principally hinges, which provides in full as follows:

"All legislative powers except as herein provided, shall be vested in and exercised by the board of commissioners, which shall constitute the legislative body. The commissioner of public affairs and safety shall be ex-officio mayor and the chief executive officer of the city, and may act as police judge; he shall have charge of all public utilities, except the collection of the revenue therefrom, and shall be the head of the police and fire department. All executive duties not specifically conferred upon other officers shall devolve upon him; he may collect all fines and forfeitures in the police court and report and transmit the same to the commissioner of finance and accounts at the end of each month.

"The commissioner of finance and accounts may be ex-officio city clerk; he may have charge of and collect all revenues and funds when due to said city from every source, except as herein provided. He shall apportion said revenues to the proper fund when received by him and keep exact books of accounts thereof; he shall anticipate and report to the board of commissioners the amounts necessary to be raised by taxation for the payment of interest on bonded indebtedness, for accumulation to sinking funds, for the purchase of supplies and for the ordinary running expenses of the city, and the board of commissioners shall cause proper estimates and levies to be made and taxes collected in the manner provided by law.

"The commissioner of streets and public property shall have supervision of all streets, alleys, ways, cemeteries and parks of said city, and charged with the duties of maintaining and improving same. He shall be the custodian of and keep in repair all the public property of said city, except that belonging to or used in connection with the public utilities, and he shall be head of the health department. He shall cause all street duty or labor to be performed, or collect the money due in lieu thereof; he shall collect all revenues derived from public property, except the public utilities, and report and transmit same to the commissioner of finance and accounts at the end of each month.

"Each commissioner shall be the executive head of his respective department, and, except as herein limited, shall have full and complete charge thereof, and shall be held solely responsible for the efficiency of the same; provided, the board of commissioners may transfer the duties devolving upon any commissioner so that same shall be performed by any other commissioner when the efficiency of the public service or best interests of the city demands such change."

It is under the general proviso of this section that the majority of the commission claim the power of transferring the police department from the commissioner of public affairs and safety to the commissioner of streets and public property. In our opinion the action of the commission is well within the purview of the power granted by the proviso.

It must be kept in mind that the primary purpose of the charter was to create what is known as commission form of government in contradistinction to government by a mayor and city council.

The general grant of power contained in section 7, supra, makes the board of commissioners the governing body of the city. This section declares that the exercise of power of said city shall be vested in, and all powers exercised by, its board of commissioners. Primarily the board of commissioners as a body constitute the governing body. The power of the commission, of course, must be exercised in the ordinary way; that is, by a concurrence of the majority of the board of commissioners, and no commissioner can be divested of any of the rights or prerogatives to which he is entitled as a member of the board, nor can the power to govern granted to the commission as a whole be taken away or limited except in the manner provided in the charter.

The central idea of the charter is to provide a commission form of government for the city, and while the charter in the first part of section 5 provides for a partial distribution of powers among the commissioners, and, no doubt, contemplates that this distribution of powers and duties shall be controlling under ordinary circumstances, the proviso to the section just as clearly provides that the governing body, that is, the board of commissioners, may transfer the duties devolving upon any commissioner so that the same shall be performed by any other commissioner when the efficiency of the public service or best interests of the city demand such change.

This proviso, it must be remembered, is a part of section 5, supra, and as a provision of the charter is entitled to the same rank and dignity as an expression of the will of the people as any other provision of the instrument. The proviso seems to us to be free from ambiguity, and clearly confers upon the board of commissioners the power to transfer the duties devolving upon any other commissioner so that the same shall be performed by any other commissioner when the efficiency of the public service or best interests of the city demand such change.

And we see no incongruity in this, nor any infringement upon any of the rights or prerogatives of the state Legislature in matters of state concern. Whether a city operating under a charter form of government adopted by the people is governed by a mayor and a city council or by board of commissioners is purely a matter of municipal and local concern, in which the state has no interest. The state has an interest in the enforcement of all state laws within a charter city, but whether these laws are enforced by a mayor and council or by a board of commissioners or a particular member of the board is wholly immaterial in so far as the state is concerned.

And while the Legislature of the state may impose upon the local officers of a charter city specific duties in the manner of the enforcement of the laws of the state having force and effect within the city, and may provide penalties for failure to discharge such duties, and in respect to the duties here imposed the municipality and its officers are the agents of the state and subject to its command and control at all times (State ex rel. Burns v. Linn, 49 Okla. 326, 153 Pac. 826), the Legislature has not the power to impose upon a charter city any particular form of city government contrary to the provisions of the city charter. In re Initiative Petition, City of Okmulgee, supra.

The form of government of a charter city being purely a matter of municipal concern, the provisions of the charter must control in both the matter of declaring the form of government to be adopted and the distribution of municipal powers and duties among the municipal officers.

So we conclude that, while the people in the first part of section 5 confer certain specific powers and duties upon certain named city officers, in the proviso they just as clearly confer upon the board of commissioners the power to transfer the duties devolving upon any commissioner so that the same shall be performed by any other commissioner when the efficiency of the public service or best interests of the city demand such change. The people of the municipality are speaking through the charter as much in the proviso as in the first part of section 5, and equal weight must be given to their mandate in both respects in construing the provisions of the charter. There is some contention that Walton, Mayor, v. Donnelly et al., 83 Okla. 233, 201 Pac. 367, supports the contention of the plaintiff in error. We do not think so. In that case the charter of the city of Oklahoma City was under consideration. Section 1, art. 2, section 4, art. 2, and section 6, art. 2, of that charter closely approximate certain of the sections of the charter now under consideration. The board of commissioners of Oklahoma City claimed the right to transfer control of the police department from the mayor, to whom it was specifically granted in a separate section, to another department under another separate section, to wit, section 11, art. 2 of the charter, which provides as follows:

"The board of commissioners shall have the power to assign duties not specifically named above to any department to which they may properly belong, and shall have power by a vote of four out of five commissioners to transfer duties from one commissioner and one department to another commissioner and another department."

The question for consideration in that case, as stated by the court, was, "Did the framers of the charter in this sentence use the word 'duties' in the latter part of the sentence to refer to the same 'duties' referred to in the first part of the sentence, or did they use it in its broad and unlimited sense, and refer to any and all duties?" The court held that under the well-established rules of construction the word "duties" in the latter part of the section referred to the "duties" mentioned in the first part hereof, to wit, the duties not specifically granted in other separate sections of the chapter; and that section 11 did not constitute a limitation upon the specific grant of power contained in the other separate sections of the charter. The court held in that case, as in this, that the question involved turned upon the construction to be given to the charter, but reached a different conclusion on account of the differences in the two charters hereinbefore pointed out.

For the reasons stated, the judgment of the trial court is affirmed.

JOHNSON, C. J., and McNEILL, KENNAMER, and HARRISON, JJ., concur.