## CITY OF WAGONER v. CASE, Adm'x, et al.

No. 22139.   Feb. 19, 1935.

Watts & Broaddus, for plaintiff in error.

West, Gibson, Sherman, Davidson & Hull, for defendants in error.

BUSBY, J.   This is an appeal from a judgment of the district court of Wagoner county in an action by the city of Wagoner against E. F. Case, commissioner of lights, water, and sewerage of the city of Wagoner, and National Surety Company, to recover on the official bond of E. F. Case. The court sustained a demurrer to the plaintiff's second amended petition. Upon the death of E. F. Case the suit was revived in the name of Anna Clyde Case, administratrix of his estate, and an appeal by transcript from the judgment of the court was brought to this court.

It is alleged in the plaintiff's petition that from July 15, 1924, to May 4, 1925, defendant Case was the duly appointed, qualified, and acting commissioner of lights, water, and sewerage of plaintiff city, appointed to fill the unexpired term of Geo. H. Walters, resigned; that in April, 1925, defendant Case was duly elected commissioner of lights, water, and sewerage for a three-year term from May 4, 1925, and was the duly elected, qualified, and acting commissioner from May 4, 1925, to May 28, 1926, when he resigned and his resignation accepted. The plaintiff further alleges the execution and approval of the official bond of Case, with defendant National Surety Company as surety, in the sum of $5,000.

It is alleged that from July 15, 1925, to May 25, 1926, there was paid to, and collected and received by, Hill, the city clerk, under the supervision, direction, and control of said Case, certain funds from the sale, use, and rent of electric current, lights, and water, and sale of merchandise and oil and cash, but that the city clerk did not turn over same to the city treasurer, thus rendering the defendant Case and his surety liable on his official bond. It is alleged as a second cause of action that Commissioner Case furnished and sold elec-

tric current and water to numerous users and consumers who failed to pay for same, and that the defendant Case, as such commissioner of lights and water, violated his duty as such in continuing to furnish lights and water to delinquents from whom the bills for same cannot be collected. The names of the delinquents and amounts due were attached to the petition as an exhibit, and judgment asked for in the total sum.

The plaintiff made various articles and sections of the city charter of its city a part of its petition. Under article 18, section 3a, of the Oklahoma Constitution, this court will take judicial notice of such charter. Section 1 of article 5 of the city charter provides, in part, that:

"The executive and administrative functions, duties, powers and authority of the city shall be distributed into and among the three following departments: Department of police, fire, finance, and revenue; department of lights, water and sewerage; department of streets, alleys, health and public property."

Section 2 provides that the mayor shall be in charge of the department of police, fire, finance and revenue; the commissioner of lights, water and sewerage shall be in charge of the department of lights, water and sewerage.

Section 3 provides:

"Board of Commissioners Assign Duties.— The board of commissioners shall determine and assign the duties of the mayor and commissioners of the several departments by ordinance or resolution, not inconsistent with this charter; shall prescribe the duties of officers and employees; may assign particular officers and employees to one or more of the departments; may require an officer or employee to perform duties in two or more departments, and may make such other rules and regulations as may be deemed necessary or proper for the efficient and economical conduct of the business of the city."

Section 4 provides:

"Readjustment by Board.—For the purpose of equalizing the amount of responsibility and work as between the departments of the respective commissioners, the board of commissioners shall have power to readjust by ordinance the subdivisions of work of the respective commissioners when it shall determine that the public service requires such readjustment."

Section 16 of article 3 provides:

"The city clerk, city assessor, city treasurer, city attorney, municipal judge, chief of police, and fire chief shall be under the department of police, fire, finance and revenue; the plumbing inspector, and city electrician and machinst shall be under the department of lights, water and sewerage; and the street commissioner and city civil engineer shall be under the department of streets, alleys, health and public property, but their services may be required by the board of commissioners in any other department when not engaged in the above departments, or in two or more departments of the city at the same time."

Section 1 of article 7 provides:

"Commissioner's Duties. — The commissioner of lights, water and sewerage is charged with the administration of this department. * * * He shall collect the revenues arising from the electric lights and waterworks of the city, according to such rates and under such rules and regulations as the board of commissioners may from time to time fix and enact. * * *"

Section 4 of article 4 provides:

"Section 4. Duties and Powers of the Board of Commissioners.—The board of commissioners of the city of Wagoner shall be vested with the power, and charged with the duty of adopting all laws and ordinances, not inconsistent with the Constitution of the state of Oklahoma, and operative by this charter, prescribing and setting forth the duties, salaries, etc., of every city official and employee, and also touching every subject-matter and subject within the purview of the local government, instituted by this charter."

With these provisions of the charter in existence it appears that the plan of collecting money for the city was changed by the board of commissioners. The plaintiff alleges in its second amended petition:

"That in its regular meeting on August 23, 1912, the board of commissioners of plaintiff duly passed a resolution directing and commanding that from and after the passage thereof 'all collections shall be made through the office of the city clerk and all funds for the several departments of the city shall be handled through said office and by said city clerk turned over to the city treasurer, to be credited to the proper fund', thereby delegating to the city clerk the ministerial duty of collecting and handling all money due plaintiff: that said resolution has been at all times since the passage thereof, and is now, in full force and effect; and at all times since the passage thereof, all boards of commissioners of plaintiff, and all mayors, and all commissioners, and all city clerks, have acquiesced in and followed same, and have been governed thereby, and in pursuance thereof and in obedience thereto, all collec-

tions in all departments of plaintiff have been made and handled by the city clerk, under the supervision, direction and control of the mayor in his department, and the commissioners in their respective departments."

Reviewing now, in excerpt, the various provisions of the charter, we find from section 1 of article 7 that, with other administrative duties, the commissioner of water, lights, and sewerage is required to collect the revenues arising from electric lights and waterworks of the city under such rules and regulations as the board of commissioners may from time to time fix and enact.

We find in section 3 of article 5, that the board of commissioners shall determine and assign the duties of the mayor and commissioners of the several departments by ordinances or resolutions not inconsistent with the charter, and shall make such other rules and regulations as may be deemed necessary or proper for the efficient and economical conduct of the business of the city.

The board of commissioners, under section 4 of article 7, is vested with power and charged with the duty of adopting all laws and ordinances pertaining to all matters within the local government instituted by the charter. Section 4 of article 5 of the charter provides that the board of commissioners shall have the power to readjust by ordinance the subdivisions of the work of the respective commissioners when it shall determine that the public service requires such readjustment.

Acting within that power and authority granted them by the charter, the board of commissioners, on the 23rd day of August, 1912, duly passed a resolution directing and ordering that, from and after its passage, the city clerk should thereafter make all the collections of all the funds in the various departments of the city, and should turn the same over to the city treasurer. It is alleged in the plaintiff's petition that the city clerk from and after the passage of that resolution has always collected all of the funds due to the city and its various departments.

Under the provisions of section 16 of article 3 of the charter, the services of the city clerk and other officers in any department could be required to render service in two or more departments at the same time, and under section 3 of article 5, the board

of commissioners was given full authority to assign to the city clerk the duty of making collections of the funds due to the city. We cannot agree that this was in conflict with any of the provisions of article 7, enumerating the duties of the commissioner of lights, water, and sewerage, when considered in connection with other provisions of the charter. Nowhere does the charter provide that this commissioner shall personally collect and deposit the water and light rentals and revenues. He was given general supervision of the department of lights, water, and sewerage, and until the 23rd day of August, 1912, he had authority under the charter to make collections of the light and water revenues, but this specific duty, and the collections of all funds due in the several departments and the depositing of same with the city treasurer, were given to the city clerk by the board of commissioners.

With these facts in mind, we are unable to agree with the contention that the commissioner of the department of water, lights, and sewerage would be personally liable for the defalcations or failure of a duty on part of the city clerk, so authorized and empowered by the board of commissioners to perform. The plaintiff contends, however, that, under the charter, the responsibility for the performance of the duties of collecting the revenues of the light and water and keeping the accounts thereof and the payment of such revenues into the city treasury rests upon the commissioner of lights, water, and sewerage, even though he acts through clerks and employees; and further contends that this responsibility cannot be delegated to the city clerk or other subordinate official of the city, citing authorities to support its contention. The city clerk is not an employee of the commissioner of lights, water, and sewerage, and is not under his supervision, but under the department of police, fire, finance and revenue. (Section 16, article 3, supra.) When the duty of collecting and paying over to the city treasurer the revenues of the city was by resolution of the board of commissioners placed upon the city clerk, an officer in a different department of city government, it is not shown that it was the intention of the board of commissioners that the city clerk, in performing such functions, was to act through the instrumentality of the commissioner of lights, water, and sewerage, or that the books of the clerk showing such collections and payments to the

city treasurer would be under the supervision of such commissioner.

Neither the case of Walton, Mayor, etc., of Oklahoma City v. Donnelly, Com'rs, etc., of Oklahoma City, et al., 83 Okla. 233, 201 P. 367, cited by plaintiff, nor the cases therein cited sustain the plaintiff's contention that the responsibility of collecting the finance of the department of the commissioner of lights, water, and sewerage, placed upon the commissioner of the city charter, cannot be delegated to another by the board of commissioners under the provisions of the charter.

In the Walton-Donnelly Case cited, this court held:

"Where an officer is created by city charter and the duties thereof are defined by that instrument, it is not within the power of the commissioners to transfer such duties to another office unless there is some specific provision in the charter authorizing such a transfer."

The holding of this court in none of the cases cited went further than to say that when an express authority is granted to an officer or a board by the Constitution or the city charter, such authority cannot be taken away or transferred by an inferior legislative body—the Legislature or the city legislative body—unless there is some provision in the Constitution or charter authorizing such transfer. This court had under consideration a question similar to the one here presented in the case of Hinz v. Hubbard, 95 Okla. 164, 216 P. 440, wherein it was contended that the Sand Springs city charter having specifically made the commissioner of public affairs and safety ex-officio mayor head of the police department, and enjoined upon him the duties of enforcing the laws of the city, such powers and duties were not and cannot be vested elsewhere by act of the board of commissioners or a majority of them. The portion of the Sand Springs charter considered provides:

"Each commiss'oner shall be the executive head of his respective department, and, except as herein limited, shall have full and complete charge thereof, and shall be solely responsible for the efficiency of same; provided, the board of commissioners may transfer the duties devolving upon any commissioner so that same shall be performed by any other commissioner when the efficiency of the public service or best interests of the city demand such change."

There is a very great similarity in that proviso to the language contained in section 3 of article 5, supra, which provided that the board of commissioners may make such other rules and regulations as may be deemed necessary or proper for the efficient and economical conduct of the business of the city, and to the language found in section 4 of the same article, where it provides that the board of commissioners shall have power to readjust by ordinance the subdivisions of the work of the respective commissioners, when it shall determine that the public service requires such readjustment. The board of commissioners certainly would have no authority to transfer the duties imposed upon one department of the city government by charter to another department without some authority in the charter to do so. In the Hinz v. Hubbard Case, supra, this court held:

"Record examined, and held, that, under the proviso of section 5, art. 3, of the charter of the city of Sand Springs, the board of commissioners may transfer the duties devolving upon any commissioner so that the same shall be performed by any other commissioner when the efficiency of the public service or the best interest of the city demands such change"

—and said:

"The central idea of the charter is to provide a commission form of government for the city, and while the charter in the first part of section 5 provides for a partial distribution of power among the commissioners, and, no doubt, contemplates that this distribution of powers and duties shall be controlling under ordinary circumstances, the proviso to the section just as clearly provides that the governing body, that is, the board of commissioners, may transfer the duties devolving upon any commissioner so that the same shall be performed by any other commissioner when the efficiency of the public service or best interests of the city demand such change."

We must presume that the board of commissioners in the instant case found that it was necessary for the efficient and economical conduct of the business of the city, and that public service required that these funds be collected by the city clerk rather than by the commissioners in the various departments of the city government. The commissioner of lights and water did not employ the city clerk to make the collections, but the clerk was appointed by the board of commissioners, and, as shown by the record, the city clerk was required to give bond for the faithful performance of his duty. The provisions of the city charter do not make the commissioner of lights

and water responsible for the acts of other bonded officers or employees of the city.

In 22 R. C. L. 487, section 166, the rule is stated as follows:

"Public officers and agents of the government are not liable for the acts or defaults, negligence or omissions of subordinate officials in the public service, whether appointed by them or not, unless they direct the act complained of to be done, or personally co-operate in the negligence from which the injury results."

Reading from 43 Corpus Juris, 717, par. 201, we find the rule stated as follows:

"Negligence of Inferior Officer or Employee.—Applying the rule above stated, a municipal officer is not personally liable for the negligence of an inferior officer, unless he, having the power of appointment, failed to use ordinary care in the selection."

In Robertson v. Sichel, 127 U. S. 507, 32 L. Ed. 204-206, that court held:

"* * * A public officer or agent is not responsible for the misfeasances or positive wrongs, or for the nonfeasances, or negligences, or omissions of duty of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties. * * *" (Citing Keenan v. Southworth, 110 Mass. 474; Bailey v. Mayor of N. Y., 3 Hill. 531, and other decisions sustaining the rule.)

In the case of State of Alabama v. Kolb (Ala.) 78 So. 817, it was held:

"Neither an officer nor his bondsman is, in the absence of a statute imposing liability, or of negligence on his part in appointing or supervising his assistant, liable for the defaults and misfeasances of assistants appointed by him under statutory authority."

In the instant case the city clerk was not acting as deputy commissioner, nor as an employee of the commissioner of lights and water department.

There is nothing in the plaintiff's pleadings which connects the defendant Case personally with the receipt of, and failure to account for the sum there sought to be recovered in the first cause of action, neither do we think the pleadings show any responsibility on the part of the defendant Case for the acts of the city clerk therein.

We are of the opinion that when all of the various provisions of the city charter pleaded herein are considered and construed together, it conclusively shows that the passage of the resolution by the board of commissioners placing upon the city clerk the duty of collecting all revenues coming to

the city was in no wise an unauthorized delegation of power by the board or was in any manner in conflict with the provisions of the charter. That being true, the defendant was in no wise responsible for collecting of the light and water fees and rentals, nor for the failure to turn off the electric current and water where bills of consumers had not been paid, upon which plaintiff's second cause of action is predicated. We think the judgment of the trial court was correct in sustaining the demurrer of the National Surety Company to both causes of action set up in plaintiff's petition, and the judgment is therefore sustained.

McNEILL, C. J., OSBORN, V. C. J., and RILEY and PHELPS, JJ., concur.