**AIRPORT COMMISSION FOR the CITY OF CEDAR RAPIDS, Plaintiff-Appellee,**

**v.**

**Karl SCHADE, Defendant,**

**and**

**Firefighters Local 11, Intervenor-Appellant.**

**No. 2–58894.**

Supreme Court of Iowa.

Aug. 31, 1977.

Robert F. Wilson, Cedar Rapids, for appellants.

David F. McGuire and David P. McManus, Cedar Rapids, for appellee.

Heard before MOORE, C. J., and RAWLINGS, REYNOLDSON, HARRIS and McCORMICK, JJ.

HARRIS, Justice.

The airport commission for the City of Cedar Rapids (the commission) brought this declaratory judgment action to determine whether it is required to comply with chapter 400, The Code (civil service for cities), and chapter 411, The Code (retirement systems for policemen and firemen), in connection with an airport safety force. The trial court determined the commission was not required to comply with either chapter in

connection with the safety force and we agree.

The commission established the airport safety force as an agency independent from the Cedar Rapids police and fire departments. Certain of the force's duties were formerly performed by those departments. Airport safety officers' duties are to fight fires, assist in crash rescue, undertake periodic fire inspections, undertake various police responsibilities, and provide security for passengers and airline personnel during boarding according to federal regulations.

In connection with their firefighting activities the safety force would be required to use and maintain firefighting equipment and possess the knowledge of how to fight structural fires as well as chemical fires peculiar to aircraft crashes. They would have to be specially trained in fire rescue from aircraft. Fire equipment would be required to be at hand at all times in order to comply with the federal regulations.

The safety officers also would be assigned duties wholly unrelated to police or firefighting activities such as inspecting runways. In connection with the security officers' responsibilities in searching passengers prior to boarding the safety officers would be required to undergo training on such police matters as arrest and various procedures relating to security. Safety force members would spend 60 percent of their time in law enforcement, 30 percent in security, and ten percent in firefighting and firefighting training.

This declaratory judgment action was brought against an individual airport officer. Thereafter Firefighters Local 11 intervened. Following judgment for the plaintiff the intervenor brought this appeal.

I. The first question is whether members of the airport safety force come within those provisions of chapter 400, The Code, which relate specifically to firemen and policemen.

Section 400.6, The Code, provides for the chapter's general application " * * * to all appointive officers and employees * * in cities under any form of government having a population of more than fifteen thousand * * *." The section provides a long list of exceptions, none of which are applicable to this dispute. The members of the safety force are appointive employees of the City of Cedar Rapids which has a population of over 15,000. Therefore it is apparent chapter 400, The Code, covers the airport safety force.

The question remains however whether members of the airport safety force are firemen for the purposes of chapter 400 and subject to the chapter's special provisions relating to firemen. No statutory definitions of the term "firemen" exists within the chapter. Therefore the word should be construed according to its normal usage. Section 4.1(2), The Code; *State ex rel. Turner v. Drake*, 242 N.W.2d 707, 709 (Iowa 1976); *State v. Kool*, 212 N.W.2d 518, 520 (Iowa 1973). A fireman is defined as a member of a fire company. A fire company is defined as a company of men organized to extinguish fires. See Webster's New International Dictionary, Unabridged, Third Ed., 1964.

A reading of the other sections in chapter 400 supports the trial court's finding that airport safety force members are not firemen. Chapter 400 does not set up more stringent requirements for firemen and policemen than for other civil servants, though it does in certain respects treat firemen and policemen differently. Where these officers are treated differently it is done on a departmental basis. The purpose of differentiation seems to be administrative and not because of the nature of the duties as firemen and policemen. Doubtless the existence of special retirement systems for firemen and policemen (chapter 411, The Code) is one of the reasons for special treatment occasionally accorded firemen and policemen in chapter 400. For example, the chapter 411 pension plan could be a part of the reason for separate treatment regarding transfers. See § 400.15.

The separate classification for safety force members in no way conflicts with the purposes of the civil service laws. We have previously pointed out chapter 400 applies

to safety force members even though it does not make them firemen. Most of the benefits to the safety force and to the public which accrue under the chapter will still obtain even if the members are not deemed firemen.

It is significant the safety force will be under the direction and control of the airport commission. It is not difficult to imagine reasons for centralized management of the airport safety force. Having the safety force segregated from the fire and police departments makes separate management possible. Evidence at trial indicated establishment of the airport safety force as a separate department would result in economy of administration and a chain of command with direct airport supervision.

The trial court's finding comports well with general principles of civil service law:

■ "Constitutional and statutory civil service provisions should be liberally construed in their entirety to further their purpose to put positions in the classified service beyond political control or the exercise of partisanship and personal favoritism. Thus, they should be so construed as to meet the public demand in which they originated for the removal of employment in the public service from partisan politics and the placing of it upon the basis of merit and fitness to be ascertained by competitive examinations open to all. The rule of liberal construction will not, however, warrant the thwarting of express legislative direction by a resort to judicial construction of its terms." 15A Am.Jur.2d, Civil Service, § 5, p. 11. See generally 62 C.J.S. Municipal Corporations § 462b, pp. 893–895.

■ Without question any classification such as this must be a reasonable one. In *Brightman v. Civil Serv. Com'n. of City of Des Moines*, 204 N.W.2d 588, 591 (Iowa 1973) we stated:

"Civil service legislation requires classification of positions. The constitutional equal protection safeguard requires that the line drawn be a rational one, and that there be nondiscriminatory application of the law within the class established. (Au-

thorities)." See also *Cedar Mem. Park Cem. Ass'n. v. Personnel Assoc., Inc.*, 178 N.W.2d 343, 350 (Iowa 1970). We believe the separate classification of the safety force is reasonable. Centralization of administration and a more clear-cut chain of command and a lowering of costs seem worthy and reasonable goals.

The union claims there is inequality of treatment between safety force members and members of the Cedar Rapids fire department. However equality of treatment is only required within the same class of employees. See *Brightman*, supra, 204 N.W.2d at 591. Firemen and safety force members are not in the same class of employees. Separate classification for safety force members under a strikingly similar plan was approved in *Wright v. Fort Worth*, 497 S.W.2d 88 (Tex.Civ.App.1973).

Although it is apparent part of the duties of the safety force would include fighting fires we do not believe the safety force members fit within the definition of a fireman. The safety force has responsibilities far broader than firefighting. We note the provisions in chapter 400 which specially relate to firemen and policemen refer to fire and police departments. See §§ 400.13, 400.17. The safety force is not within such a *department* but is a part of and subject to the airport *commission*. Its members are not members of a fire department but members of the airport safety force.

We therefore hold, although airport safety force members come within the provisions of chapter 400, they do not come within the provisions of that chapter relating specifically to firemen and policemen.

■ II. In its second assignment of error the union argues the provisions of chapter 411 should apply to members of the airport safety force. On appeal the union attempts to bolster the argument by urging it would be unconstitutional not to apply chapter 411 to the airport safety force. However the constitutional argument was not raised in trial court. It cannot be raised for the first time on appeal. *Speed v. Beurle*, 251 N.W.2d 217, 219 (Iowa 1977).

We therefore give the constitutional argument no further consideration.

■ Sections 411.2 and 411.3 establish retirement systems for policemen and firemen and prescribe the requirements for membership in that retirement system. Section 411.1(3) defines firemen, for the purposes of the chapter, as " * * * the members of a fire department who have passed a regular mental and physical civil service examination for firemen and who shall have been duly appointed to such position. Such members shall include firemen, probationary firemen, lieutenants, captains, and other senior officers who have been so employed for the duty of fighting fires." Because of the statutory definition disposition of this assignment turns on whether the airport safety force is a fire department. Fire department is not defined in chapter 411. Hence, as was the case in considering the union's claims under chapter 400, the meaning of the term fire department, for purposes of chapter 411, is the approved normal usage of the term. That meaning was established in the previous division as "a company of men organized to extinguish fires."

We are forced to the same conclusion with regard to chapter 411 that we reached in the previous division in considering chapter 400. We do not believe an analysis of the duties of the airport safety force leads to the conclusion the force is an organization designed to put out fires. According to the evidence only ten percent of the force's time will be spent in firefighting and firefighting training. The duties of the members relate generally to the safe operation of an airport. The ten percent of the time relating to firefighting is only a necessary adjunct to the larger objective.

The union relies on our opinion in *Johnson v. City of Red Oak*, 197 N.W.2d 548, 551 (Iowa 1972) in which we found Red Oak had an organized police department within the meaning of chapter 410, The Code. In *Johnson* the organization in question was clearly providing police protection for the city of Red Oak. Its employees were certainly acting as police officers. The facts in this case are easily distinguishable. Here there is no organization clearly carrying out the normal duties of a fire department. Rather the airport safety force has a much broader and mainly different set of duties. *Johnson* is not authority for the proposition the safety force is a fire department.

The union also cites *Dempsey v. Alber*, 212 Iowa 1134, 236 N.W. 86 (1931). In *Dempsey* we held the secretary of a city health department was a member of the police department for purposes of a statute requiring payment of monthly pensions to members and widows. However *Dempsey* is not in point because the case only decided whether a particular individual was a member of a police department. It was not a case of whether an organization with its own unique duties was a police department.

We believe the legislature intended chapter 411 to apply to municipal fire and police departments throughout Iowa. There is nothing to indicate the legislature intended the chapter to reach any further. While policy arguments of the union have considerable appeal they should be presented to the legislative branch of government. The union's second assignment is without merit.

III. In a separate assignment the union seeks to bolster its argument with the home rule amendment. The union argues as follows:

"As set forth in Article II Section 40 (sic Article III Section 38A) in the Constitution of the State of Iowa and as stated by the Court in *Bechtel v. City of Des Moines*, 225 N.W.2d 326 (Iowa 1975), under the Iowa home rule, state power remains superior to that of city power in that a city cannot exercise any power or authority inconsistent with the laws of the General Assembly. As set forth in Section 364.2(3) an exercise of a city power is not inconsistent with a state law unless it is irreconcilable with the state law. Since airport commissions' powers are the same as those granted to cities, except the right to levy taxes, under Section 330.21, an airport commission is likewise limited to activities not inconsistent and irreconcilable with state law."

The union then argues the airport commission has no power to organize firemen and policemen in such a way as to place firemen and policemen outside the civil service and pension systems established by the General Assembly. The union argues the establishment of the safety force is in irreconcilable conflict with chapters 400 and 411.

The powers of an airport commission are outlined in § 330.21, The Code. Under that section an airport commission has, with one exception, the same powers under chapter 330 regarding the airport as a city, county, or township would have if there were no airport commission. The lone exception relates to selling the airport. Under § 330.21 it is obvious an airport commission has power to "operate" an airport. The granting to the commission of the power to operate the airport is no violation of state law. § 330.-17, The Code.

Since the commission's power to operate the airport is no greater than would be the city's if there were no airport commission, the commission must abide by the constraints articulated in § 364.1, The Code. Section 364.2(3), The Code, defines inconsistent: "An exercise of a city power is not inconsistent with a state law unless it is irreconcilable with the state law."

We discussed § 364.2(3) in *Green v. City of Cascade*, 231 N.W.2d 882, 890 (Iowa 1975). Under our holding in *Green* state statutes should be interpreted, if possible, in a way to render them harmonious with the actions of the city.

In the instant case it is possible to reconcile the actions of the commission in setting up an airport's safety force with chapters 400 and 411. The safety force can properly be deemed to rest outside the ambit of chapters 400 and 411. The duties of the force members are not the same as those of firemen and policemen. And members of the force are employees of the *commission*, not members of fire or police *departments*. The reconciliation lies in the fact that firemen and policemen provisions in chapters 400 and 411 are simply inapplicable to employees of an airport commission. Conse-

quently the airport commission has not violated § 364.1 in setting up the force as it did.

In the Texas case of *Wright v. City of Fort Worth*, supra, the city of Fort Worth was a home rule city. The Texas court found no inconsistency with constitutional or general law. The union's third assignment is without merit.

The judgment of the trial court must be and is hereby affirmed.

AFFIRMED.