**Dwight CLASPILL et al., Plaintiffs-Appellants,**

v.

**CITY OF SPRINGFIELD, Missouri, Defendant-Respondent.**

**No. 11038.**

Missouri Court of Appeals, Southern District, Division Two.

April 17, 1980.

Charles C. Shafer, Jr., Kansas City, for plaintiffs-appellants.

Winston Davis, Howard C. Wright, Jr., Springfield, for defendant-respondent.

PER CURIAM:

This is a class action declaratory suit brought by plaintiffs Dwight Claspill, J. D. Edwards and Local No. 152, International Association of Fire Fighters (union). Claspill and Edwards are officers of the union. Defendant, City of Springfield, has a constitutional charter form of government, and derives its powers from its charter. Plaintiffs' petition alleged that the city was violating the provisions of its charter by removing the fire fighting responsibilities at the Springfield Municipal Airport from the fire department and transferring such responsibilities to the city's aviation board. Plaintiffs, in their claim for relief, requested that the trial court declare "the defendant city must also comply with its charter provisions in order to have the required degree of fire fighting, emergency and other safety services at the airport being solely provided by the fire department as required by the said charter." The city's answer denied removing fire fighting responsibilities at the airport from the fire department and transferring such responsibilities to the aviation department. The answer stated that plaintiffs were required to fight all fires arising from buildings, grounds and structures on the airport premises, but that aviation fire fighting and crash rescue func-

tions had been assigned to airport personnel, who were identified in the record as airport safety line service operators, commonly referred to as ACR (aircraft crash rescue) personnel. The ACR unit employees are hired by, and operate under the control of, the airport board. They are trained in aircraft crash rescue functions, including the extinguishing of fires in aircraft. Further answering, the city denied violating its charter, and contended that its actions in connection with assigning the job duties in question were authorized by the charter. The trial court heard evidence, and thereafter entered judgment for defendant and against plaintiffs, the pertinent part of which reads as follows: "The court adjudges and declares that the City is not in violation of the Charter by having the ACR facility under the control and supervision of the Airport Board." See Appendix for the trial court's findings of fact, conclusions of law and judgment.

This appeal followed. Plaintiffs' sole point on appeal is that the trial court erred as a matter of law in finding in paragraph 10 of its findings of fact and conclusions of law, that the city council could transfer the function of fire fighting at the airport from the fire department to the airport board, for the reason that such transfer was in violation of § 4.1 of the city charter; that it was illegal to transfer a charter assigned duty from a city officer created by charter to a "non-city officer," and that such an attempted transfer amounted to a "discontinuance" of a charter function, that was in violation of § 4.1.

In the statement of facts portion of its brief, plaintiffs assert "[f]or many years, the City's Fire Department had the sole responsibility for fire fighting at the Airport, but it has now been transferred to the Aviation Board." This assertion, upon which plaintiffs base their case, is a complete and total misstatement of fact. There was no evidence introduced at trial to justify such a statement, as fire fighting at crash scenes at the airport had always been assigned to airport personnel, and had never been assigned to the fire department.

Plaintiffs' counsel acknowledged the misstatement of fact when he argued the case on appeal, but made no attempt to correct the factual situation by a supplement to his brief. Violation of the requirement that an appellate brief contain a fair and concise statement of facts warrants dismissal of the appeal. Rule 84.04(c), Mo. Rules of Court, V.A.M.R.; *Robinson v. Laclede Gas Co.*, 553 S.W.2d 495, 496 (Mo.App. 1977). We would do so, but for the fact that there are no real facts in dispute, and what is really involved is charter interpretation.

In further examining plaintiffs' brief, we find that plaintiffs' point of error does not contain any relevant citation of authority. The citations, as expounded upon in the argument portion of the brief, mainly consists of abstract statements of law, without a showing as to how they are related to any action or ruling of the trial court in violation of Rule 84.04(d).

For example, the citations of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976) and *Abco Tank & Mfg. Co. v. Fed. Ins. Co.*, 550 S.W.2d 193 (Mo. banc 1977) merely establish the standard of review in court tried cases. That is not an issue here. Plaintiff next cites *State ex rel. Skrainka Const. Co. v. Reber*, 226 Mo. 229, 126 S.W. 397 (banc 1910). This case holds that the St. Louis city charter provided that the street commissioner should "authenticate" certain tax bills, and that such act could be delegated to the street commissioner's assistant, since the authentication (signing one's name) was a ministerial act. We fail to see how such legal reasoning has any application here. *Pearson v. City of Washington*, 439 S.W.2d 756 (Mo.1969) is cited as authority for the proposition that a city has no power, absent a charter provision authorizing such, to transfer by ordinance the duties of an officer that are assigned to him by charter or statute, to another city officer. This pronouncement is an abstract declaration of law which is condemned by Rule 84.04(d). In their brief, plaintiffs assert that *Pearson* is cited with approval in *Matthews v. City of St. Ann*, 457 S.W.2d 766, 768 (Mo.1970).

*Matthews* was a declaratory judgment case that was dismissed by the trial court. The Supreme Court reversed and remanded, saying such questions as had been raised in *Pearson* had not been answered by the trial court. The holding of *Matthews* is not even remotely connected with the issue here. *City of Wagoner v. Case*, 170 Okl. 577, 41 P.2d 669 (1935) cited by plaintiffs is really authority for respondent's position rather than for plaintiffs' position. The question before the Oklahoma court was whether a transfer by the city commissioners of the duty to collect money from the commissioner of lights, water and sewage to the city clerk was a violation of the city charter. The court said it was not, as § 3 of the city charter authorized such a transfer. *City of New Orleans v. Gray Line Motor Tours, Inc.*, 317 So.2d 214 (La.App.1975) is cited for the general proposition that city boards created by statute or charter possess only such powers as are expressly granted by law.

■ Absence of citation of relevant authority for alleged points of error ordinarily justifies the appellate court to consider the point as being abandoned. *Earney v. Clay*, 516 S.W.2d 59, 63 (Mo.App.1974). If the point of error is one for which precedent is appropriate and available, then it is the obligation of the appellant to cite it, if he expects to prevail. *Thummel v. King*, 570 S.W.2d 679, 687 (Mo. banc 1978).

■ Since plaintiffs have not cited any relevant authority for their point of claimed error, and since relevant authority was available, [see *Airport Com. for City of Cedar Rapids v. Schade*, 257 N.W.2d 500, 503 (Iowa 1977) and *Wright v. City of Fort Worth*, 497 S.W.2d 88, 90–91 (Tex.Civ.App. 1973)], the point was abandoned and not preserved for review. We would be justified in dismissing the appeal for noncompliance with the rules, Rule 84.08, but, we exercise our discretion to review for plain error, to determine if the trial court's judgment resulted in manifest injustice or a miscarriage of justice under Rule 84.13(c). The trial court, in paragraphs 9 and 10 of its findings, found that the city acted reasonably in assigning the ACR function to the airport board, even though the function could have been assigned to the fire department, and found that the function had not been discontinued. These facts and conclusions are amply supported by the evidence.

Section 4.5 of the city charter establishes a fire department and § 4.6 states that, among other functions, the fire department shall protect life and property from fire. Section 15.19 establishes an airport board, whose duties include operation of all facilities owned by the city that are used for the operation and service of aircraft. This section also provides that the airport board is subject to the federal agency controlling the flight of aircraft, and gives it the power to enforce all regulations of such agency. The city is required to operate its airport in compliance with Federal Aviation Administration Regulations. 14 C.F.R. 139 (1979). Part 139 requires adequate fire fighting and rescue equipment at the airport. While the city could have assigned the functions of the aircraft crash rescue unit to the fire department, it was not required to do so. Section 4.1 of the charter provides for certain administrative departments and boards, among which are the fire department and the airport board. This section further provides "any such departments and boards may be consolidated, or the function assigned thereto may be transferred to other boards or departments, but no function or duty, the performance of which is required by this charter, shall be discontinued."

■ This language makes it crystal clear that the council could assign the function of extinguishing fires in aircraft to the airport board, rather than to the fire department, as long as the charter duty of protecting life and property was not discontinued. Plaintiffs argue that the fire department function of protecting life and property from fire was somehow discontinued by transferring or assigning the function of operation of the aircraft crash rescue unit, whose duties include extinguishing fires in aircraft, to the ACR unit, which is under the authority of the airport board. Their position is unsound. Discontinue is a simple

word. It means, in law, to abandon or terminate the function. Webster's New International Dictionary, 3rd Edition. There was not a shred of evidence that the function was discontinued and the trial court found that the function had not been discontinued.

The city had clear charter authority to assign the function in question to the airport board. We find no error, plain or otherwise in the trial court's judgment or the findings on which the judgment was based. On page 12 of the brief, plaintiffs' counsel urges us to examine the charter provisions and the law to "see if Judge Keet's judicial hose of charter declaration will squirt any water." We have, and it did; at least enough to put out plaintiffs' fire of claimed error.

The judgment is affirmed.

All concur.

### APPENDIX

Stripped of its rejoinders to arguments made by plaintiffs in their trial brief, which rejoinders were contained in paragraphs 18 and 19, the trial court's findings, conclusions and judgment are as follows:

### 'COURT'S FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT

'1. Plaintiffs' rights, status and legal relations are affected by the City's charter and ordinances. Plaintiffs have a right to a declaration of such rights, status and legal relations. Rule 87.02(a). The case presents a justifiable controversy. This court has jurisdition [sic] of the parties and the subject matter.

'2. Plaintiffs' first amended petition (Paragraph III) alleges that the City has violated its charter requirements by *removing* firefighting [sic] responsibilities at the airport from the Fire Department and *transferring* them to the "Aviation Department" (Airport Board) in violation of the following charter provisions:

'a. Sec. 4.1, which establishes the Fire Department and Airport Board and pro-vides that no function or duty, the performance of which is required by this charter shall be discontinued;

'b. Sec. 2.16(4), which authorizes council to adopt safety and fire prevention regulations not in conflict with general laws and provide for their enforcement;

'c. Sec. 4.6, which provides that the Fire Department "shall protect life and property from fire";

'd. Sec. 2.16(16), which gives council power to regulate and control the location of aviation fields, hangars and aircraft landing places and regulate and control the use of all aircraft within or over the City; and

'e. Sec. 15.19, which establishes the Airport Board which shall take charge of and operate, in accordance with provi· sions of Article XV, all airports and other facilities for the operation and service of aircraft "now owned or operated or which may hereafter be owned or operated by the City."

'3. This case raises the question of what the charter provisions mean and, specifically, whether the charter gives council the power to have the airport firefighting [sic] facility under the Airport Board's supervision and control.

'4. Sec. 15.19 is broad enough to give and does give the Airport Board the power and duty to provide for aircraft crash rescue (ACR) facilities. Such is a function that would be reasonably and normally expected of an airport board which has to be aware of and follow, through its manager and other skilled personnel, all state and federal regulations controlling the flight of aircraft.

'5. The evidence shows that the ACR personnel have duties in addition to those of firefighting [sic]. This being so, they are not firemen as such and they are not a part of and are not supposed to be a part of the Fire Department, but rather personnel employed by the Airport Board. Their duties are connected with the operation of [the] airport, both from a firefighting [sic] standpoint and the servicing of aircraft. See

*Airport Commission for City of Cedar Rapids v. Schade,* Ia. [Iowa], 257 N.W.2d 500, 503; *Wright v. City of Ft. Worth,* Tex. [Civ.App.], 497 S.W.2d 88, 90–91.

'6. The court concludes that the "function" of the ACR facility is one which the Charter contemplates would, or at least could, be under the Airport Board and not under the Fire Department. The ACR personnel and operation have been in existence since 1946 and were handled in the same way and operated the same way as of the time the Charter was adopted in 1953.

'7. Council, with the powers given to it by Sec. 2.16, had authority to place the ACR personnel under the Airport Board, in accordance with its powers and regulatory authority as Council.

'8. The ACR personnel have never, before or after adoption of the charter, been assigned as firemen under the Fire Department. Nor have any of the Fire Department at any time, before or after the adoption of the Charter, been assigned as ACR personnel at the airport. As noted in *Wright,* supra, l.c. 89–90, Council under its broad authority to manage and control and see to the operation of the airport had adequate authority to provide for the ACR facility (personnel and equipment) at the airport as a necessary and proper way of operating the airport. This is especially true in view of the fact that the Charter requires the Airport Board to be subject to the provisions of federal regulations as provided in Sec. 15.19 of the Charter.

'9. Council acted reasonably in assigning the ACR function, as a separate classification, to the Airport Board. This has made for efficient and economical operation and a chain of command with direct airport supervision. See *City of Wagoner v. Case* [170] Okla. [577], 41 P.2d 669, 672; *Schade,* supra, l.c. 503; and *Pearson v. City of Washington,* 439 S.W.2d 756.

'10. Even if the ACR function was or could have been one of the Fire Department at one time, (either before or after adoption of the Charter), Council did not act without Charter authority or in any way unreasonably in assigning or transferring such func-

tion to the Airport Board. Doing so did not "discontinue" such function in violation of Sec. 4.1 of the Charter, which allows Council to assign the function of a department (including the Fire Department) to another board or department so long as such function, the performance of which is required by the Charter, is not discontinued. If there is, as in Sec. 4.1, a specific Charter provision conferring authority for assigning, such assigning can be done.

'11. Fire protection connected with the airport is not a function exclusively of the Fire Department. It is true that the Fire Department would be available and under a duty to answer requests for firefighting [sic] at the airport's property. This does not mean, however, that there has to be at the airport a full complement of Fire Department personnel and equipment stationed at the airport in addition to the ACR personnel, who have other duties. Such would be economically infeasible, under the evidence, and would appear to be no[t] reasonably required for protection of the airport. The nearest Fire Department station is within 5 to 8 minutes time from the airport. Council could reasonably determine, as it has, that a Fire Department station should not and cannot economically be installed and staffed at the airport property.

'12. The Airport Board must comply with federal regulations (Part 139) which mandate that there be an ACR facility. Even if a Fire Department installation were put at the airport, the ACR facility would have to be maintained by the City to comply with the federal regulations.

'13. As noted in *Schade,* supra, l.c. 503, the benefits to the public are not diminished because members of the ACR force are not classified as firemen and placed under the direct jurisdiction of the Fire Department.

'14. Sec. 2.16(4) of the Charter gives the City power to adopt safety and other similar regulations. The ACR function properly comes under the City's power to provide for safety at the airport, as at other places within the City.

'15. *Wright,* supra, is similar to the case at bar and involves charter provisions akin to those of the City of Springfield. That case confirmed that the City under its Charter could create ACR squads and place them under the Aviation Department of the City. This is in effect what has been done by the City of Springfield.

'16. The court concludes that the City has not acted outside the Charter or in any way unreasonably or illegally in having the ACR facility at the airport in charge of the Airport Board and not in any way connected with the Fire Department. The City's action and planning have, so far as evidence shows, prejudiced no one. It has resulted in the efficient and safe operation of the airport facility in compliance with federal regulations, which it has had to do.

'17. Plaintiffs in their brief urge that the total function of the Airport Board is to operate the airport and other facilities for the operation and service of aircraft under Sec. 15.19 of the Charter and that there is nothing that gives them anything more to do than the operation and servicing of aircraft. However, safety is especially important with and in connection with aircraft. Fire rescue facilities are necessary for the safe operation of aircraft and the airport itself, including its terminal and other buildings.

'18. . . .

'19. . . .

'20. The petition prays the court to adjudge and declare that the City must comply with the Charter by having the firefighting [sic], emergency and other safety service at the airport solely provided by the Fire Department as required by the Charter. The court concludes that the prayer should be denied. The court finds the issues for defendant and against plaintiffs. Plaintiffs' prayer for attorney fees should and will be denied. The court adjudges and declares that the City is not in violation of the Charter by having the ACR facility under [the] supervision and control of the Airport Board. Judgment will therefore be entered in favor of defendant and against plaintiffs. Costs are taxed against plaintiffs.

'JUDGMENT

'The court adjudges and declares that the City is not in violation of the Charter by having the ACR facility under the control and supervision of the Airport Board. Plaintiffs' prayer for attorney fees is denied. Costs are taxed against plaintiffs.'